**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**THOMPSON & KNIGHT,
et al., Defendants.**

No. 7:92–CV–045–A.

United States District Court,
N.D. Texas,
Wichita Falls Division.

March 24, 1993.

Shannon Michael Sanders, Michael H. Gentry, Robert H. Holt, West Adams Webb & Allbritton, Bryan, TX, Kenneth Lewis, F.D.I.C., Washington, DC, for plaintiff.

Lonny D. Morrison, Morrison & Shelton, Wichita Falls, TX, Rebecca P. Adams, Stephen James Pierce, Jr., Barry Ray Bell, Lyman G. Hughes, Charles Mark North, Carrington Coleman Sloman & Blumenthal, Dallas, TX, for Thompson & Knight.

Jerry R. Selinger, Lawrence J. Fossi, Vinson & Elkins, Dallas, TX, for Myers Financial Corp.

Edward Linn Kemble, Cantey & Hanger, Fort Worth, TX, Lyman G. Hughes, Carrington Coleman, Sloman & Blumenthal, Dallas, TX, for James A.W. Rose.

Jack Gage Banner, Banner Briley & White, Wichita Falls, TX, for Lewis Farmer, B.H. Gregg, Jr., F.D. Hamilton, Jr., L.D. Jones, Jr., J.P. Lewis, James W. Petty, Lewis D. Terry, Charles Baker and Gary D. Rowe.

R. Stephen Moore, Law Office of R. Stephen Moore, Graham, TX, for Wade Fikes, David Ickert, Jeff McClatchy.

Alvin Homer Badger, Law Offices of Alvin H. Badger, Dallas, TX, for Gene Wilborn.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on for consideration the motion of defendants Thompson & Knight, P.C., ("T & K") and James A. W. Rose ("Rose") for summary judgment. The court, having considered the motion, the response of plaintiff, Federal Deposit Insurance Corporation, ("FDIC"), related briefs and replies of movants and FDIC, the summary judgment evidence, the record, and applicable authorities, has concluded that the motion should be granted.

### I.

### *FDIC's Pleaded Claims and Capacity in which FDIC Asserts the Claims*

This action arises out of activities allegedly occurring from January 1982 until October 14, 1988, in relation to Olney Savings Association ("OSA") and its wholly owned subsidiaries, Olney Mortgage Resources ("OMR") and Olney Service Corporation ("OCS"). OSA was a state chartered, federally insured savings association. OMR and OSC are private corporations.

The defendants, in addition to T & K and Rose, are former directors of OSA, a former officer and director of OMR and OSC, former shareholders of OSA, Myers Financial Corporation ("MFC"), which is the successor to Myers Development Corporation ("MDC"), and Michael A. Myers ("Myers"), who controlled MFC and MDC and was involved in certain transactions with OSA, OSC, and OMR. T & K, a law firm, and Rose, an attorney associated with T & K, rendered legal services to OSA, OMR, and OSC. FDIC alleges that defendant Myers, an OSA shareholder, controlled OSA and its subsidiaries and caused them to take actions that were detrimental to them but beneficial to him. T & K and Rose are alleged to be liable for the resulting losses because they represented OSA, OMR, and OSC in various transactions despite conflicts of interest, were negligent in providing legal services, and negligently and knowingly participated in breaches of fiduciary duty.[1] The "negligence and wrongful acts of the Defendants" related to the various transactions about which FDIC complains allegedly "caused damage to OSA and its subsidiaries" in ex-

---

1. As movants point out, the claims against them, although labeled "negligence" and "participation in breach of fiduciary duty," are for legal malpractice. *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988); *Sledge v. Alsup,* 759 S.W.2d 1, 2 (Tex.App.—El Paso 1988, no writ).

cess of $50,000,000. First Amended Complaint at 22, 27, 29–31.

The genealogy of FDIC in relation to OSA has a beginning date of October 14, 1988, when the Federal Home Loan Bank Board ("FHLBB") declared by resolution that OSA was insolvent, and appointed Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver for OSA ("FSLIC/receiver"). By operation of law, FSLIC/receiver became the holder of OSA's assets and liabilities and succeeded to the rights, titles, powers and privileges of OSA, its members, directors and officers. 12 U.S.C. § 1729(c)(B)(i)(II); 12 C.F.R. §§ 547.7 and 549.3. *See FSLIC v. Oldenburg,* 671 F.Supp. 720, 723 (D.Utah 1987). On that same date, FSLIC/receiver entered into an acquisition agreement with NuOlney Savings Association, now known and hereinafter referred to as AmWest Savings Association ("AmWest"), pursuant to which FSLIC/receiver transferred to AmWest almost all of OSA's assets. Among the assets transferred to AmWest were all loans and collateral at issue here and the stock of OSC and OMR. FSLIC/receiver retained only certain furniture, fixtures, equipment, office leases, and specified claims against former officers, directors, shareholders, attorneys, and agents of OSA. By a separate agreement dated October 14, 1988, which is referred to as a "receiver's agreement", FSLIC/receiver conveyed the assets it had thus retained to FSLIC. So, by the end of the day, FSLIC/receiver was left without any assets. Pursuant to an assistance agreement FSLIC and AmWest entered into on October 14, 1988, FSLIC in its corporate capacity agreed to provide financial assistance and indemnification as to certain "covered" assets acquired by AmWest.

The enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") in August 1989 abolished the FHLBB and the FSLIC and created the Federal Savings and Loan Insurance Corporation Resolution Fund ("Fund"), which is managed by FDIC. All assets of FSLIC were transferred to the Fund, including those FSLIC/receiver had transferred to FSLIC by the receiver's agreement on October 14, 1988. FDIC filed this action as manager of the Fund as the ultimate assignee of FDIC/receiver.[2]

After FDIC filed its first amended complaint in November 1992, a controversy arose between the parties as to the nature and scope of the causes of action FDIC is asserting by its amended complaint. FDIC maintained that its amended complaint did not expand the scope of claims it had asserted in its original complaint. The controversy was resolved by a determination by the court, as expressed in the order signed by the court January 26, 1993, that:

> The court interprets the original complaint as alleging that the causes of action, and only causes of action, asserted through that complaint are ones that Federal Savings and Loan Insurance Corporation, as receiver of Olney Savings and Loan Association ("OSA"), ("FSLIC/Receiver") acquired by operation of law when Federal Savings and Loan Insurance Corporation was appointed receiver for OSA, and that were thereafter conveyed, transferred and sold by FSLIC/Receiver to Federal Savings and Loan Insurance Corporation, in its corporate capacity, ("FSLIC/Corporate") by virtue of the receiver's agreement between FSLIC/Receiver and FSLIC/Corporate dated October 14, 1988.

**2.** In its original complaint, FDIC defined the capacity in which it brought the action as follows:

> 8. The plaintiff is the Federal Deposit Insurance Corporation ("FDIC") as manager of the Federal Savings and Loan Insurance Corporation Resolution Fund *as successor to the Federal Savings and Loan Insurance Corporation in its corporate capacity as assignee from the Federal Savings and Loan Insurance Corporation as receiver of OSA* and its subsidiaries OSC and OMR.

Original Complaint at 6 (emphasis added). One of FDIC's deposition designees testified as follows:

> Q. Are you aware of any claims that the FDIC purports to own against Thompson & Knight or any of the other defendants in this case, in any capacity other than as an assignee of the FSLIC as receiver?
> A. I am not aware of any.

Motion for Summary Judgment, Ex. "A", Ex. "1" (Fulton Dep.) at 64–65.

The allegations made by paragraph 5 of the first amended complaint, which define FDIC as plaintiff in this action, are somewhat vague. However, in FDIC's responses to the motions FDIC maintains that it has not added new causes of action. The court is accepting such representation of FDIC at face value, and on the basis thereof is denying the motions to strike. If the proper interpretation of language contained in the first amended complaint is that it asserts a claim or cause of action that was not asserted in the original complaint, that language will be disregarded in determining the nature and scope of the claims and causes of action that are being asserted by FDIC.

1/26/93 order at 3–4. No party has disagreed with the interpretation placed by the court on the pleadings of FDIC.

In one of the documents it filed responsive to the motion, FDIC characterized its claims against T & K and Rose as "tort claims ... for damages resulting from improper loans." FDIC's Response to Thompson & Knight and James A. W. Rose's Reply to FDIC's Partial Response to .Motion for Summary Judgment at 5. Though not all its presentations in response to the motion are a model of clarity on the subject, FDIC finally acknowledged that the damages it seeks to recover are for losses that it claims were sustained by OSA and are not for losses sustained by FDIC in its corporate capacity; and, FDIC has made clear that it is not contending that it is entitled to recover by virtue of losses it has suffered or will suffer through obligations undertaken by FSLIC in its corporate capacity in the assistance agreement, though it does maintain that the assistant payments "represents [sic] losses to the insurance fund which FDIC can replenish with any recovery had on its claims against T & K and Rose." *Id.* at 11. FDIC's contentions on this subject are summed up by the following statements it made in opposition to the motion:

FDIC is suing T & K and Rose for OSA's and its subsidiaries' losses which were sustained and recoverable when the loans and investments were made. These are not losses sustained by FDIC/Corporate or AmWest. Whether FDIC's claims against T & K and Rose are asserted for OSA or OSA's shareholders, depositors and creditors, the operational facts underlying its claims will not differ. As stated above, the damages for OSA's and its subsidiaries' losses are the total amount loaned or advanced plus interest less credits for salvage. The assistance payments are not the measure of damages, but represents [sic] losses to the insurance fund which FDIC can replenish with any recovery had on its claims against T & K and Rose.

*Id.* In a telephone conference between the court and counsel on March 3, 1993, counsel for FDIC confirmed that FDIC is not asserting in this action any claim derivative through the assistance agreement.[3]

## II.

### *The Motion and FDIC's Response*

The summary judgment of T & K and Rose is "on the ground that neither the FDIC nor its predecessors suffered the losses of which FDIC complains." Motion for Summary Judgment [of T & K and Rose] at 2. T & K and Rose defined the controlling issues of law they say entitle them to summary judgment as follows:

41. Whether the FDIC is entitled to assert claims against Thompson & Knight and Rose for legal malpractice in any capacity other than as assignee of OSA's

---

3. The following exchange occurred between the court and counsel for FDIC during the March 3 telephone conference:

THE COURT: I am not asking you to disclose any secrets that you would prefer not to disclose, but has FDIC accepted the proposition that it is not going to be able to recover in this lawsuit payments it made by virtue of obligations it assumed under the Assistance Agreement?

MR. GENTRY: Yes, Your Honor. I believe that is correct.

THE COURT: So that's really not an impediment to the negotiations, some notion that they can recover under that?

MR. GENTRY: No, Your Honor.

Tr. of 3/3/93 Tele. Conf. at 25.

Receiver, when neither the FDIC nor the FSLIC–Corporate had any direct attorney-client relationship with those attorneys with respect to the transactions at issue in this case.

42. Whether the established principle of law that an assignee has no greater or different rights than its assignor applies to the FDIC in this case, as the Fifth Circuit has already held in a very similar action, *FDIC v. Ernst & Young,* 967 F.2d 166 (5th Cir.1992).

43. Whether the FDIC, as manager of the Resolution Fund which is the ultimate assignee of OSA's Receiver, is entitled to recover for losses that neither OSA nor OSA's Receiver suffered, and that will be incurred, if at all, by other entities.

44. Whether the fact that neither the FDIC, the FSLIC, nor any other governmental agency was ever the receiver of OSC and OMR precludes the FDIC from recovering for losses that OSC and OMR allegedly suffered.

45. Whether OSA's Receiver ever owned any claims of OSC or OMR against their attorneys, even though OSA's Receiver was never the receiver of these subsidiaries, and even though OSC and OMR did not ever assign those claims to OSA or OSA's Receiver.

46. Whether, in the unlikely event that OSA's Receiver owned claims of OSC and OMR, the Receiver transferred those claims to AmWest.

*Id.* at 12–13.

FDIC set forth in its response[4] its version of the disputed issues of law as follows:

a. Whether the FDIC has legal standing to sue T & K and Rose on malpractice claims arising out of their legal representation of OSA's wholly owned corporations, OSC and OMR.

b. Whether FSLIC/Receiver had authority to retain and convey to FSLIC/Corporate the malpractice claims against T & K and Rose of OSA's wholly

owned service corporations, OSC and OMR.

c. Whether the FDIC can sue T & K and Rose on behalf of itself or depositors, shareholders, and creditors of OSA.

d. Whether T & K and Rose have standing to challenge the construction of and enforcement of the Acquisition and Receiver Agreements.

e. Whether federal law or state law applies to a receivership's disposition of the assets of a failed thrift.

f. Whether T & K and Rose have standing to challenge the contractual assignment of the claims of OSA's wholly owned service corporations, OSC and OMR.

g. Whether the terms of the Acquisition and Receiver Agreements are ambiguous.

h. Whether the FDIC brought this suit in a limited capacity as an assignee of FSLIC/Receiver or in all of its legal capacities.

i. Whether the FDIC has legal standing to recover losses sustained before and after October 14, 19[8]8, the date that the OSA's assets were conveyed to the acquiring association.

FDIC's Partial Response to T & K's and Rose's Motion for Summary Judgment at 5–6.

The response contains FDIC's suggestions as to disputed issues of fact that would prevent grant of the motion as follows:

a. Whether OSA and its wholly owned service corporations, OSC and OMR, suffered losses on the loans and investments underlying FDIC's claims against them prior to October 14, 1988, the date OSA failed.

b. Whether the "risk of loss" on the assets of OSA and its wholly owned service corporations were assumed by FSLIC under the Assistance Agreement.

---

4. FDIC refers to its response as a "Partial Response" because of its assertion in the response that it needed a continuance for the making of the response so that it might more fully develop responsive summary judgment evidence. While

the court formally denied the motion for continuance, as a practical matter FDIC received all the relief sought by the motion by virtue of later orders of the court giving FDIC permission to file supplemental responsive material.

c. Whether the legal malpractice claims of OSA's wholly owned service corporations were retained by FSLIC/Receiver and subsequently transferred to FSLIC/Corporate.

d. Whether the FDIC has paid for losses suffered by OSA on the subject loans and OSC's investments in the subject joint ventures.

*Id.* at 6.

### III.

*Applicable Summary Judgment Principles*

■ A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The movant may discharge this burden by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. at 2510, 2514. An issue is material only if its resolution could affect the outcome of the action. *Id.* at 248, 106 S.Ct. at 2510. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir. 1984).

The Fifth Circuit explained the burden placed on the nonmovant:

When the nonmovant fails to make a sufficient showing on an essential element of her case, the moving party is entitled to summary judgment "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *McKee v. City of Rockwall, Texas,* 877 F.2d 409, 414–15 (5th Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990) (quoting *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552).

### IV.

*The Legal Issues Posed by Paragraphs 41, 42, and 43 of the Motion*

The answers to the issues of law posed by paragraphs 41, 42 and 43 in the motion and paragraphs c., h., and i. of the legal issue section of the response appear to be self-evident. FDIC has not asserted claims against T & K or Rose for legal malpractice in any capacity other than as ultimate assignee through OSA's receiver. The principle that an assignee has no greater or different rights than its assignor applies to FDIC in this case. *FDIC v. Ernst & Young,* 967 F.2d 166, 169–70 (5th Cir.1992); *City of Taylor v. Hodges,* 143 Tex. 441, 186 S.W.2d 61, 63 (1945); *State Fidelity Mortgage Co. v. Varner,* 740 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1987, writ denied). In the capacity in which FDIC brought this action, it is not entitled to recover for losses that neither OSA nor OSA's receiver suffered.

■ Moreover, FDIC has no right to assert claims against T & K or Rose for legal malpractice in any capacity other than as ultimate assignee of OSA's receiver. Under Texas law, persons outside the attorney-client relationship have no cause of action for legal malpractice. *Marshall v. Quinn–L Equities, Inc.,* 704 F.Supp. 1384, 1394–95 (N.D.Tex.1988); *Dickey v. Jansen,* 731 S.W.2d 581, 582–83 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart, P.C.,* 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). T & K and Rose owed no independent duty to FSLIC, FDIC, or AmWest,

with the consequence that any loss suffered by FSLIC, FDIC, or AmWest cannot be charged against T & K or Rose.

## V.

### *Alleged Malpractice Related to OSA's Subsidiaries*

■ The court now turns to consideration of the issues of law posed by paragraphs 44, 45, and 46 of the motion and by paragraphs a. and b. of the legal issue section of the response. As for the claims based on alleged losses suffered by OSC and OMR, movants have demonstrated that FDIC does not have standing to bring or pursue them. The subsidiaries were never in receivership under FSLIC, nor could they have been. Former 12 U.S.C. § 1729 gave FLHBB the authority to appoint FSLIC as receiver only of insured institutions, which the subsidiaries were not. Although FDIC argues that FSLIC/receiver retained the subsidiaries' claims when it transferred the stock of the subsidiaries to AmWest, FSLIC/receiver did not have the right to do so, because an action to redress corporate injuries lies exclusively with the corporation. Shareholders do not have the right to assert such claims. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 221 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943).[5] The parties do not dispute that the subsidiaries never transferred their rights to OSA.[6] There is no contention that the subsidiaries assigned their rights to anyone. Further, like a shareholder, a creditor cannot sue to recover directly for a corporation's injury. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 724 (Tex.1990); *Sutton v. Reagan & Gee*, 405 S.W.2d 828, 835 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). Thus, it matters not whether FSLIC/receiver purported to retain such rights when it made the transfer to AmWest. FDIC simply has no standing to assert those claims. Additionally, and in any event, the burden was on FDIC to adduce summary judgment evidence that OSC and OMR suffered losses as a result of the conduct of T & K and Rose. FDIC has not met that burden.

## VI.

### *There is No Evidence that FDIC Suffered the Losses it Claims*

Each party places principal reliance on the opinion of the Supreme Court in *Corsicana Nat'l Bank v. Johnson*, 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919), in support of the party's position on the issue of whether FDIC has adduced evidence that it suffered the losses it claims in this action. FDIC's reliance on *Corsicana* is for the propositions that when an illegal loan is made by a financial institution the financial institution suffers as a loss the full amount of the loan, that the cause of action for recovery of that loss accrues at the time the loan is made, and that the full amount of the loan becomes recoverable by the financial institution from the wrongdoer as soon as the loan is made. On the other hand, T & K and Rose argue, first, that the rulings in *Corsicana* upon which FDIC relies are not applicable in the instant action because they were dependent on unique provisions of Texas statutes that were in effect when *Corsicana* was decided but are not involved in this action, and, second, that other rulings in *Corsicana* support their contention that when FSLIC/receiver transferred the loans about which FDIC complains to AmWest on October 14, 1988, the risk of loss on those loans was transferred to AmWest, with the consequence that neither OSA nor FSLIC/receiver experienced any losses in relation to the loans for which any wrongdoer can be held accountable to the ultimate assignee of FSLIC/receiver.

■ The court is not required to decide the merit of FDIC's reliance on *Corsicana* or

---

5. To the extent that *In re American Continental Corp./Lincoln Savs. & Loan Securities Litigation* appears to hold otherwise, the court declines to follow the opinion of the Arizona district court. 794 F.Supp. 1424, 1455 (D.Ariz.1992). In any event, that case appears to have been decided under California or Arizona law.

6. This does not purport to be a shareholder derivative action, but, if it did, AmWest would be the shareholder who would bring the action in the names of, and for the benefit of, the corporations.

of the first point movants make in respect to that decision because the court has concluded that the measure of damage rule expressed in *Corsicana* compels the conclusion that there are no losses as to the loans in question that can be recovered through OSA, FSLIC/receiver, or the ultimate assignee of either of them.

The Supreme Court gave the following pertinent explanations on the subject of measure of damages:

> [T]he cause of action against [the wrongdoing director] accrued ... when the Bank through his act parted with the money loaned, receiving in return only negotiable paper that it could not lawfully accept because the transaction was prohibited by § 5200, Rev. Stats. The damage as well as the injury was complete at that time, and the Bank was not obliged to await the maturity of the notes, because immediately it became the duty of the officers or directors who knowingly participated in making the excessive loan to undo the wrong done by taking the notes off the hands of the Bank and restoring to it the money that had been loaned. *Of course, whatever of value the Bank recovered from the borrowers on account of the loan would go in diminution of the damages....*

*Id.* at 86–87, 40 S.Ct. at 90 (emphasis added).

> [I]t is plain that the transaction of February 12, 1908, in which the Bank sold the Fleming and Templeton notes and indebtedness to the loan company for their full face value, was *prima facie* tantamount to a satisfaction of the damages that the Bank had sustained by reason of the excessive loan....

*Id.* at 89, 40 S.Ct. at 91.

> Had the disposition made of them in February, 1908, been valid and unassailable, it would have borne the appearance of a satisfaction of the damages only because the two corporations were legally separate....

*Id.* at 92, 40 S.Ct. at 92.

A proper reading of *Corsicana* is that if the lending institution, or someone acting for it, transfers an illegally made loan in exchange for its full face value, the risk of loss related to the loan has been removed from the lending institution and has been placed with the transferee, AmWest in this case. This is another way to say that when such a transfer occurs, the losses that apparently existed at the time the loan was made are eliminated; and, whatever damages would otherwise be measured by those losses are satisfied by the transfer.

Each party relies on the same summary judgment evidence as supporting the party's position on the issue of whether the summary judgment record presents a disputed issue of fact as to damages. FDIC maintains that its position on the damage issue is supported by the affidavit of William R. Welch, C.P.A. ("Welch"), which was filed January 25, 1993, as a part of FDIC's motion for leave to file a supplemental affidavit in opposition to the motion for summary judgment (which motion for leave was granted by order signed January 27, 1993). T & K and Rose maintain that Welch's affidavit and its attachments actually support their position that there are no recoverable losses; and, T & K and Rose have submitted, with an affidavit of Rebecca P. Adams filed February 16, 1993, a transcript of the entire oral deposition of Welch as conclusively establishing that there are no recoverable losses through OSA or FSLIC/receiver as to the loans in question.

FDIC's reliance on Welch as establishing recoverable losses is misplaced. Welch's affidavit, the attachments to his affidavit, and his deposition testimony establish conclusively that the losses in relation to the loans to which Welch refers are nothing other than losses that have been, or in the future could be, suffered by FDIC in its corporate capacity under the assistance agreement. The relevance to this action of the Welch summary judgment evidence is that it establishes that there are no recoverable losses derivative through OSA or FSLIC/receiver as to the loans in question in this action.

Before considering in more detail the Welch summary judgment evidence, the court notes other summary judgment evidence that bears on the damage issue. As previously discussed, FSLIC/receiver transferred to AmWest by acquisition agreement dated October 14, 1988, all the loans in question. Motion for Summary Judgment, Ex.

"A", Ex. "5", at 5–6 (§ 2). By that same agreement, AmWest assumed certain obligations of OSA. *Id.* at 8 (§ 3). The purchase price for the assets acquired by AmWest pursuant to the agreement was AmWest's assumption of liabilities under the agreement. *Id.* at 10 (§ 6).

Welch treats the allocation of the purchase price to the individual loans to be the equivalent of "book value" of the loans, which he defines to be "the loan's principal balance plus any accrued but unpaid interest." FDIC's Motion and Brief for Leave to File a Supplemental Affidavit in Opposition to the Defendants' Motion for Summary Judgment, Ex. "A" (to motion and brief), Ex. "A" (to affidavit of Welch), Welch 1/11/93 letter to Gentry, at 2; *id.* report of damages at 5. n. 5. If Welch is correct on that subject (and there is nothing in the summary judgment record to indicate that he is not), then under the rules expressed by the Supreme Court in *Corsicana* on the subject of measure of damages, there would be no damages as to the loans in question because OSA, through FSLIC/receiver, would have received "their full face value" in exchange for their transfer to AmWest. *Corsicana,* 251 U.S. at 89, 40 S.Ct. at 91. Welch, who has been presented by FDIC as its expert on damages in this case, in effect confirmed this absence of damages when he testified on his deposition that:

> Q. ... Assume for purposes of my question that there had never been an assistance agreement between FSLIC in its corporate capacity and AmWest. With that assumption in mind, would it be your opinion that, since there are no distinctions between covered or uncovered loans, in fact there were no covered loans in the assistance agreement, there would be no damages that would be recoverable in this action?
>
> A. You are asking me to assume that they would essentially be all noncovered, —
>
> Q. Yes.
>
> A. —If you will?

---

7. A "covered" asset is a loan received by AmWest through the acquisition agreement that AmWest has designated, pursuant to the terms of the assistance agreement, as a "covered asset" as to

> Q. Yes.
>
> A. That would be correct.

Affidavit of Rebecca P. Adams in Support of Motion for Summary Judgment of Thompson & Knight, P.C., and James A. W. Rose, Ex. "1" at 23. And, Welch confirmed that both covered and uncovered [7] assets were transferred to AmWest at "book value":

> Q. All right. Who had the risk of loss on the uncovered assets after the date of the assignment of assets from the receiver to AmWest?
>
> A. AmWest.
>
> Q. And that's because—why is that?
>
> A. Those assets were transferred at book value.
>
> Q. The covered assets were also transferred at book value, were they not?
>
> A. Yes.

*Id.* at 69, 40 S.Ct. at 83.

Moreover, Welch made clear by his deposition testimony that all risk of loss on the loans transferred by FSLIC/receiver to AmWest is to be borne by AmWest except to whatever extent the assistance agreement shifted the risk to FSLIC in its corporate capacity:

> Q. But going back to something we talked about earlier this morning, if there had been no assistance agreement, all of the loans would have been, in essence, uncovered loans; isn't that correct?
>
> A. That's my understanding, yes.
>
> Q. All right. And so your opinion would be that if there had been no assistance agreement, the risk of loss on all of the loans, since they are uncovered, would have gone to AmWest; isn't that correct?
>
> A. Yes.

Affidavit of Rebecca P. Davis in Support of Motion for Summary Judgment of Thompson & Knight, P.C., and James A. W. Rose, Ex. "1" at 70–71. On this same subject, Welch testified that:

> Q. Well, let me go back to the hypothetical I asked you a moment ago. If the

---

which AmWest will receive financial assistance from FSLIC under the assistance agreement. Motion for Summary Judgment, Ex. "A", Ex. "2" (Hughes deposition) at 113, 115–16.

FDIC and AmWest should enter into a settlement in their litigation that provides that a covered loan would be reclassified retroactively to the date of the assignment as an uncovered loan, and any assistance payments paid on it would be reimbursed to the FDIC, would there then be, in your opinion, no damage on that transaction?

A. Under that scenario, yes.

Q. Yes, there would be no damages?

A. No damages.

*Id.* at 80, 40 S.Ct. at 87.

The excerpts set forth above from Welch's deposition show that he is treating as damages the amount of the assistance payments FSLIC, now FDIC, in a corporate capacity, has made, or will make, pursuant to the assistance agreement. Welch is legally in error when he expresses the conclusion that those damages are damages recoverable in this action. However, the court agrees with the conclusion implicit in Welch's summary judgment evidence that the transfer of the loans in question to AmWest at face value ("book value") caused there to be no damages recoverable through OSA or FSLIC/receiver for irregularity, if any, in the making of the loans in the first instance.

As to the investment transactions about which FDIC complains, the court agrees with T & K and Rose that FDIC has failed to adduce any summary judgment evidence in support of its contention that OSA suffered any damages as to those transactions. And, as to the remaining item, the alleged $7.7 million distribution to Myers, the court has concluded that the only summary judgment evidence presented by FDIC on that subject is *so incomprehensible as to be meaningless.* *See* Exhibits in Support of FDIC's Rule 56(f) Motion for Continuance to Respond to Motion for Summary Judgment, Ex. Nos. "M" and "N."

The court has considered each of FDIC's proposed disputed issues of law and disputed issues of fact, and has concluded that none of FDIC's legal propositions or proposed issues of fact can serve to defeat the motion for summary judgment.

## VII.

### *Order*

The court, therefore, ORDERS that:

(1) The motion for summary judgment of T & K and Rose be, and is hereby, granted; and

(2) All claims and causes of action of FDIC against T & K and Rose be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims of FDIC against T & K and Rose.