THE SALINA MERCANTILE COMPANY, *Appellee*, v.
SIGMUND STIEFEL *et al.*, *Appellants*.

No. 16,280.

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Dividends out of Invested Capital Induced by Willful Deceit of Stockholders—Liability of Stockholders.* Where the directors of a corporation intend to distribute only its accrued profits, but a stockholder, by willfully deceiving them as to the surplus on hand, induces them to declare and pay a dividend the effect of which is to reduce the amount of the invested capital, he thereby fraudulently obtains from the company the sum by which his own share in the distribution has been increased by such misrepresentation; and is liable to it in at least that amount.

2. FRAUD—*Joint Wrongdoers—Authorization or Adoption of Another's Act.* Where several stockholders unite in the perpetration of such a fraud they are liable jointly to the extent of the total excess received by all.

3. CORPORATIONS—*Consent of Minority of Directors to Excessive Dividend Procured by Deceit of Majority.* Where the participants in such a fraud constitute a majority of the board of directors, and by deceiving in the manner indicated the other members induce their concurrence in the declaration of such an excessive dividend, the situation presented is the same as though the conspiring stockholders, not being themselves directors, had so misled the entire membership.

Appeal from Saline district court; ROLLIN R. REES, judge.    Opinion filed March 12, 1910.    Affirmed.

*T. L. Bond,* and *R. A. Lovitt,* for the appellants.

*Z. C. Millikin, C. W. Burch,* and *B. I. Litowich,* for the appellee.

The opinion of the court was delivered by

MASON, J.: Sigmund Stiefel and Pauline Rothschild appeal from a judgment rendered in an action brought against them by the Salina Mercantile Company, a Kansas corporation.    The principal controversy is whether the petition stated a cause of action.    Its sub-

stantial allegations, so far as necessary for the determination of this question in its general aspect (leaving some special features of the matter to be considered later), were as follow:

The corporation had an authorized capital of $40,000, of which $37,000 was paid up. The defendants were stockholders. For purposes of their own they wished a dividend to be declared in excess of the accrued profits of the business. To accomplish this result they represented to the directors that there was a surplus on hand of $26,148.90—that is, that the assets of the company exceeded its paid up capital by that amount. In fact the surplus was only $20,148.90, the merchandise being worth $53,818.90, and other property bringing the total assets up to $57,148.90. The defendants knew the actual value of the merchandise, but to gain their end falsely represented to the directors that an invoice which had just been taken showed it to be worth $59,818.90—a "padding" of $6000. The directors, believing the misrepresentation, and relying upon it, distributed among the stockholders $26,148.90, supposing the company to have that amount in excess of the capital invested, when in fact it had but $20,148.90. By virtue of the deception the defendants received $4000 in excess of what their share would have been had only the real surplus been divided, and the plaintiff asked and obtained judgment for this amount.

The substance of the plaintiff's claim is that the defendants by means of false representations induced it to pay out money which otherwise it would not have parted with. It also maintains that the directors had no power to distribute any amount beyond the actual surplus, because, "with the exception of dividends in liquidation, dividends can be declared and paid only where there are profits to divide." (10 Cyc. 551.) The defendants insist that the rule quoted is solely for the protection of creditors, and that if a corporation owes no debts its directors may without doing it a wrong

Mercantile Co. v. Stiefel.

divide any or all of its assets among the stockholders, since this would merely be restoring the property to its real owners. Obviously, however, each stockholder has an interest in the preservation of his investment in its integrity. He is entitled to all the advantages of his venture—not merely to a return of his money. And the text-writers agree that for this reason the payment of any part of a dividend out of the capital stock is an invasion of his rights. In volume 1 of the second edition of Morawetz on Private Corporations, section 276, it is said:

"Every shareholder in a corporation is entitled to have the capital preserved unimpaired, for the purpose of carrying on the business for which the company was formed. Dividends can be paid only out of profits; and any attempt to distribute *capital* in the shape of dividends will be enjoined by a court of chancery, upon application of a dissenting member."

(See, also, 2 Cook, Corp., 6th ed., §§ 546, 547; Taylor, Priv. Corp., 5th ed., § 565; 2 Clark & Marshall, Priv. Corp. § 519; 4 Thompson, Corp., 2d ed., § 3660; 10 Cyc. 551.)

Nevertheless we find no instance of a court holding a dividend illegal because encroaching upon the capital stock, except where an express provision of the statute was violated or the security of creditors was drawn in question. But the plaintiff's case does not rest upon the question of capacity. Assuming that where all the persons concerned know the actual facts and agree to the action taken the directors of a corporation may lawfully declare a dividend somewhat in excess of the accrued profits, the assumption falls far short of justifying the conduct charged against the defendants. Granting that it may sometimes be lawful for directors to declare a dividend made up in part of the invested capital, the act is unnatural and unusual. According to the allegations of the petition the directors in this case had no thought of exercising that power if they possessed it. Plainly their purpose was not to impair the

capital, but to distribute the accumulated earnings. They consented to divide $26,148.90 only because they understood that to be the surplus. If they had known the real facts they would have limited the amount to $20,148.90. Thus by a willfully false statement they were induced to pay out $6000 of the corporation's funds—to diminish the working capital by that amount, innocently and ignorantly. Such an impairment of its resources—unintentional on its part—might be a serious injury to it. Whether that result followed in fact is not important. The company was induced by false pretenses to pay out money that it would otherwise have retained for use in its business. That the money went to its own stockholders does not alter the case, for it has an entity of its own. True, a stockholder who by fraud procures the declaration of an excessive dividend might seem to have nothing to gain, because his stock would become less valuable just in proportion as the corporation was defrauded. But he might have special reasons for wishing to obtain at once a larger cash payment than he was entitled to, and at all events this consideration could not affect the right of the corporation to demand redress for the wrong perpetrated upon it. The paid-up capital of a corporation is contributed on the theory that the amount raised is necessary to its efficient operation. It does not follow that if a part of it is returned to the subscribers the general loss to all by the impaired efficiency of the company is fully compensated by the share each individually receives in the distribution. We conclude that the petition stated a cause of action, upon the ground that where the directors of a corporation intend to distribute only its accrued profits, and a stockholder by willfully deceiving them as to the surplus on hand induces them to declare and pay a dividend the effect of which is to reduce the amount of the invested capital, he thereby fraudulently obtains from the corporation the sum by which his own share in the distribution has been increased by such

misrepresentation, and is liable to it in at least that amount.

In Judge Seymour D. Thompson's article on "Corporations" in volume 10 of the Cyclopedia of Law and Procedure, at page 549, it is said:

"If a dividend has been illegally declared in the sense that its declaration is *ultra vires,* as where it is a dividend out of assets when there is no surplus to divide, then it seems that it may be rescinded by the corporation even after it has been paid, and that the corporation may recover it of the shareholders as so much money paid to their use under a mutual mistake. It has been well reasoned that shareholders among whom assets of the corporation have been distributed by its officers, without authority from the corporation, or when acting outside the scope of their ordinary powers, are technically at least guilty of a conversion of such assets."

If money paid to a stockholder under such circumstances may be recovered as a payment made under a mutual mistake, or upon the theory of a technical conversion, there are stronger grounds for the recovery of the proceeds of an excessive dividend made under an erroneous understanding of the real situation, induced by the willful deceit of some of the beneficiaries. It is true that the cases by which the text quoted is supported turn upon the duty of the corporation to protect the rights of creditors, but certainly the protection of its own members is just as important and just as capable of enforcement by an action brought in the corporate name.

A special feature of the case as set out in the petition requires now to be noticed. The corporation had but three directors. The defendant Stiefel was one. E. Rothschild, the husband of the other defendant, and her agent in all matters connected with the company, was the second. B. A. Litowich was the third. According to the plaintiff's allegations E. Rothschild, acting in behalf of his wife, was a party to the fraud. As he and Stiefel constituted the majority of the board it

is obvious that they could have controlled its action at their pleasure and in one sense can not be said to have misrepresented matters to its members. But they are alleged to have deceived the third member, Litowich, and thereby procured his coöperation in declaring the dividend. A deception practiced upon him under the circumstances was the same in legal effect as though practiced upon the board. The other two members could not have held a valid meeting without giving him an opportunity to be present. Perhaps he could not have prevented their action if they had seen fit to out-vote him, but he was entitled to be heard with a knowl-edge of the real facts. Had he known the truth he might have been able to dissuade them from their project. He might in various ways have at least at-tempted to prevent the consummation of the fraud. The deception practiced on him may therefore fairly be said to have caused the action of the board. Pro-curing his acquiescence in the plan proposed, by false representations as to the state of the business, was to all intents and purposes procuring the action of the board by that means.

Another phase of the case as stated in the petition serves to supply a possible motive for the fraud alleged. The 370 shares of the company were held as follows: Stiefel, 22; Pauline Rothschild, 188; E. Rothschild, 1; Litowich, 159. By an arrangement between all, how-ever, it was agreed that the earnings in excess of 7 per cent per annum, instead of being distributed in propor-tion to the amount of stock held, should be divided equally between Stiefel, Pauline Rothschild and Lito-wich. The dividend in question included the earnings of three years, and therefore an amount equal to 21 per cent of the capital, or $7770, was distributed pro-portionately to the ownership of the stock. The re-mainder, including the excess of $6000, was divided according to the special agreement. Therefore the de-fendants received two-thirds of this $6000 of the capital

stock, only about 57 per cent of which they had contributed. The evidence suggested a further motive, as it tended to show that the defendants at the time of the transaction had made plans which were afterward carried out for the sale of their stock. There was also evidence that the capital of the corporation was soon increased, a matter which perhaps had some bearing as indicating that the situation did not call for a reduction of the amount invested.

The evidence showed that the action of the directors was approved by a unanimous vote at a stockholders' meeting, but this does not affect the rights of the parties, for any deception practiced upon Litowich as a director necessarily affected his conduct as a stockholder as well.

The defendants asked to have the petition made more definite as to the character of the fraud charged, and now complain of the denial of that motion. We think the allegations as already indicated were sufficiently specific. Complaint is made that there was an entire failure of proof, either that the invoice was incorrect, or, if so, that the defendants knew it. No particular item of the invoice was shown to be wrong, but there was testimony regarding the business done in previous years, and the general appearance of the stock of dry goods, from which the jury might reasonably have inferred that the value of the merchandise in that department must have been overstated by substantially the amount claimed in the petition. There was also testimony which if it was credible—and that was for the jury to determine—tended to show a substitution of a different book for one of those used in making the invoice. We can not say that there was an entire failure of the evidence to support the allegations of the petition. The principle is invoked that to sustain a charge of fraud positive proof must be offered. The application of that test, however, is for the trial court. Here the only inquiry open is whether the finding of the jury

is supported by any substantial evidence. (*Wooddell v. Allbrecht,* 80 Kan. 736.)

The defendants argue that they were not jointly liable, especially for the reason that Pauline Rothschild could not be held for a larger amount than she received, inasmuch as she was not responsible for any misconduct of her husband while he was acting as a director of the company. The essence of the offense charged, however, was not merely that Stiefel and E. Rothschild as directors declared an illegal dividend, but that for the sake of a benefit to accrue to the defendants as stockholders they fraudulently misrepresented the condition of the company so as to make such dividend appear to be natural and proper, and to procure the consent of Litowich thereto. In this phase of the matter, if the plaintiff's allegations are true, E. Rothschild acted as the agent of his wife, and she was answerable for the fraud which he committed while acting within the scope of his authority. (20 Cyc. 85.) The damages recovered being based upon a willful tort, in the perpetration of which the defendants coöperated, their liability was joint.

One of the defendants accepted certain notes in part payment of the dividend, and it was suggested that there should have been proof of their value. The declaration of the dividend was admitted, and the question whether its amount was excessive was not affected by the consent of a stockholder to accept as his share something else in lieu of money.

Various portions of the instructions are complained of, but the objections made raise substantially the questions of law already discussed. The judgment is affirmed.

Costs will be allowed for but two-thirds of the counter abstract, substantially one-third of it being made up of pleadings, instructions and findings which had already been printed in full in the abstract.

BURCH, J., not sitting.