RESOLUTION TRUST CORPORATION, Plaintiff,

v.

Ernest M. FLEISCHER et al., Defendants.

No. 93–2062–JWL.

United States District Court, D. Kansas.

June 24, 1993.

H. David Barr, Andrea J. Goetze, Gage & Tucker, Overland Park, KS, William L. Turner, R. Kent Sellers, Mike L. Racy, Gage & Tucker, Kansas City, MO, Mira N. Marshall, Resolution Trust Corp., Legal Div.–Prof. Liability Section, Washington, DC, for plaintiff.

James Borthwick, Michael Thompson, Brian C. Fries, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Delton M. Gilliland, Coffman, Jones & Gilliland, Lyndon, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, Richmond M. Enochs, Francis R. Peterson, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, John R. Toland, Toland & Thompson, Iola, KS, Greer S. Lang, Leonard B. Rose, Rose, Brouillette & Shapiro, P.C., Kansas City, KS, Kathleen A. Hardee, Thomas H. Stahl, Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves a suit brought by plaintiff Resolution Trust Corporation ("RTC") alleging multiple causes of action against former directors, officers and dividend recipients of Franklin Savings Association ("FSA"). The matter is currently before the court on the motion of defendants Ernest M. Fleischer, et al. to dismiss or, in the alternative, for summary judgment (Doc. # 51); defendant Ted Greene, Jr.'s motion to dismiss complaint (Doc. # 54); defendant Thomas Weigand's motion to dismiss or, in the alternative, for summary judgment (Doc. # 55); defendant Duane H. Hall's motion to dismiss or, in the alternative, for summary judgment (Doc. # 59); and defendant Ronald L. Pfost's motion to dismiss or, in the alternative, for

summary judgment (Doc. # 61).[1] For the reasons set forth below, defendants' motions are granted in part and denied in part. The counts against defendant Pfost are dismissed without prejudice. Counts X–XV are dismissed without prejudice as to all defendants. The motions to dismiss are denied as to Counts I–III for all defendants except Pfost, and to Counts IV–IX as to all defendants.

*II. Legal Standards*

The standards governing consideration of a motion to dismiss for failure to state a claim upon which relief can be granted are clearly established. Motions to dismiss are disfavored: a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the factual allegations of a complaint must be taken as true and all reasonable inferences must be indulged in favor of the plaintiff. *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976). Pleadings are to be liberally construed. *Gas-a-Car, Inc. v. American Petrofina, Inc.,* 484 F.2d 1102, 1107 (10th Cir.1973). The question is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence in support of his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

As an alternative ground for relief on several of the RTC's claims, defendants seek an order granting summary judgment. A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

---

1. There are 22 defendants in this action. The majority of the defendants are former directors and/or officers of FSA. The remaining defendants are trustees of trusts which received alleged illegal dividend payments or beneficiaries of those trusts. Thirteen defendants brought the original motion to dismiss or, in the alternative,

for summary judgment (Doc. # 51). The defendants who brought the remaining motions have all joined in the original motion. For the purposes of ruling on these motions, the court shall consider all defendants to have joined in the motions.

### III. Counts I–III, The Credit Enhancement Projects

Counts I–III of the complaint focus on a series of transactions involving tax-exempt revenue bonds known as credit enhancement projects (the "Projects"). The counts are asserted against eleven former directors and/or officers of FSA. The counts allege that the defendants improperly approved the issuance of letters of credit to guarantee governmental revenue bonds. Count I is a claim for breach of fiduciary duty and implied contract. Count II is a negligence claim and Count III is a claim for negligence per se.

Letters of credit for the Projects were issued between November 1984 and June 1986. Defendants assert that the claims in Counts I–III were time-barred by the two-year statute of limitations found in K.S.A. 60–513(a) prior to the time the RTC was appointed conservator on February 16, 1990. Defendants argue that because the claims were time-barred under applicable state law prior to the time the RTC was appointed conservator, the RTC is barred from bringing the claims.[2]

The RTC concedes that under normal circumstances the claims would be time-barred. However, the RTC argues that the doctrine of adverse domination applies on these facts. The adverse domination doctrine was adopted by this circuit in *Farmers & Merchants Nat. Bank v. Bryan*, 902 F.2d 1520, 1522–23 (10th Cir.1990). The doctrine operates to toll the running of the statute of limitations when the directors or officers charged with wrongful conduct dominate the board of the financial institution to the extent that there are no directors who have knowledge of the facts giving rise to possible liability who could have or would have induced the institution to sue. *Id.* at 1523. The doctrine arises due to the control of the institution by the board of directors and their resulting control of information about their own activities. In effect, the control of the institution by culpable officers and directors precludes the possibility of filing suit because these individuals cannot be expected to sue themselves or to initiate any action contrary to their own interests. *See F.D.I.C. v. Appling*, 992 F.2d 1109 (10th Cir.1993). In this case, the RTC contends that since all the FSA directors bore responsibility for the alleged wrongful actions involving the Projects, none of them would bring an action on behalf of the institution against the other directors involved in the Projects, since they would in effect be suing themselves for their own actions.

In response, defendants do not contend that there was an outside director that knew of the actions and could have induced the institution to bring suit. Rather, they contend that Marvin Steinert, the Kansas Savings and Loan Commissioner, could have appointed a special deputy pursuant to K.S.A. 17–5614 to take control of FSA and file suit on its behalf against the defendants.[3]

In their initial motion, defendants do not cite any authority that oversight by a regulatory body (even one with the power to bring an action against the directors) operates to abrogate the adverse domination doctrine. The RTC, however, in its response, cites

---

2. In determining whether causes of action asserted by the RTC against former directors and officers of a failed financial institution are timely filed, the court applies a two-stage analysis. The court must first determine whether those causes of action were time-barred under the applicable Kansas statute of limitations at the time the RTC acquired the claims. If a claim is viable under state law at the time the RTC acquires it, then the state statute of limitations ceases to operate and the federal period of limitations begins. *See F.D.I.C. v. Benjes*, 815 F.Supp. 1415 (D.Kan. 1993). The applicable federal limitations period is six years for contract claims and three years for tort claims. *See* 12 U.S.C. § 1821(d)(14)(A). Defendants contend that the federal period of limitations is not applicable to these counts be-

cause the counts were time-barred under Kansas law before the RTC was appointed conservator.

3. K.S.A. 17–5614 gives the state Savings and Loan Commissioner authority to appoint a special deputy commissioner to take charge of an institution if it appears to the commissioner that any institution is "in an unsafe condition or is conducting its business in an unsafe manner." K.S.A. 17–5615 then gives the special deputy commissioner all the rights, powers and privileges of the officers, board of directors and members of the institution. Defendants argue this would have included the right to bring the actions against the directors contained in Counts I–III of the complaint.

several instances where courts have rejected such an argument. In *Resolution Trust Corp. v. Scaletty*, 810 F.Supp. 1505 (D.Kan. 1992), Judge Kelly of this court rejected an argument similar to the one defendants make in this case. In *Scaletty*, a defendant argued that his only fiduciary duty to disclose potential wrongdoing while he was a director "ran to the Kansas Savings and Loan Commissioner and not to other shareholders or depositors." Judge Kelly stated:

[Defendant] undertakes an extensive discussion of the powers of the state commissioner, through a special deputy, to regulate or enforce the interests of Peoples Savings. It is clear, however, that in determining whether to equitably toll the statute of limitations pursuant to the principle of adverse domination, the focus must be on the defendant's fulfillment of his fiduciary duties, i.e., whether the defendant undertook to protect the interests of the corporation and its shareholders. The failure to act of a regulatory agency, which may have received some limited and incomplete information as to the potential wrongdoing, is not in itself a bar to equitable tolling where the directors who have participated in the wrongdoing fail to fulfill their fiduciary duties to the corporation.

*Scaletty*, 810 F.Supp. at 1512.

In *Resolution Trust Corp. v. Hecht*, No. R–92–371, 1993 WL 330666, slip op. at 11 (D.Md. Feb. 3, 1993), the court routinely dismissed an argument similar to that made here by defendants, stating:

The Court also rejects the Defendants' suggestion (unsupported by authority) of an "illusory control" version of the adverse domination theory under which the fact that a regulatory body (even the eventual plaintiff) had knowledge of the wrong negates the adverse domination doctrine.

In their reply, defendants cite *Hughes v. Reed*, 46 F.2d 435 (10th Cir.1931). In finding that the statute of limitations should not be tolled the *Hughes* court (among other reasons) cited the fact that the comptroller of the currency had repeatedly examined the books, had actual knowledge of the things complained of, and had ample power to compel restitution, resignation, or a receivership.

While this decision arguably supports defendants' position, recent developments in the law raise serious questions as to the weight to be given this authority. *Hughes* occurred before the development of the adverse domination doctrine, when shareholders were presumed to have sufficient knowledge to bring a suit if they had the opportunity to actively come in and inspect the books. Given the current acknowledgement, through the adoption of the adverse domination doctrine, that directors have a high degree of control as to information about their own activities that shareholders are not privy to, it is questionable whether early precedents presuming knowledge by stockholders still apply. *See F.D.I.C. v. Hudson*, 673 F.Supp. 1039 (D.Kan.1987).

In order to answer the question of whether the Kansas Savings and Loan Commissioner is a party who could sue and thus defeat the application of the adverse domination doctrine, we believe it is necessary to determine whether the duties and the ability to bring an action of the Kansas Commissioner correspond with those of a hypothetical outside, disinterested director or shareholder such that the Commissioner's inaction can be equated with inaction by such a director or shareholder. This court finds that the Kansas Commissioner simply does not stand in the same shoes as would an informed, disinterested director or shareholder. The Commissioner has no money at stake in the institution, and his personal involvement with a particular institution is much less than that of a director or shareholder. The Commissioner also has different considerations in determining whether to file a lawsuit against a particular institution than would a director or shareholder of that institution. He must consider what effect such a suit would have on the general savings and loan industry in the state, and how a suit against a particular institution might affect other institutions under his supervision. Additionally, as a practical matter, it would be extremely difficult, if not impossible, for the Commissioner to effectively monitor and bring lawsuits based on negligent or unlawful conduct by directors and/or officers. The Commissioner would be forced to appoint a special deputy to "take

over" an institution and file suit every time the Commissioner became aware of actions that had the potential to be wrongful. The cases this court has reviewed discussing the adverse domination doctrine uniformly speak of the doctrine tolling the statute of limitations if the plaintiff effectively negates the possibility that an informed *stockholder* or *director* could have induced the corporation to sue. Because the Kansas Savings and Loan Commissioner, as the head of a regulatory body, does not have the same incentives or abilities to bring a suit on behalf of an institution as would outside directors of shareholders of the institution, the Kansas Savings and Loan Commissioner is not a party who could sue and defeat the application of the adverse domination doctrine. Defendant's motions to dismiss on this ground are denied.

Defendant Pfost raises two additional arguments in his motion to dismiss or, in the alternative, for summary judgment on Counts I–III. Pfost argues that because he was not a director of FSA, and therefore was not a member of the control group, that the adverse domination doctrine should not apply to toll the claims against him. Defendant Pfost additionally argues that the RTC has failed to state a cause of action upon which relief may be granted against him.

■ Pfost acknowledges that he was a director and officer of Franklin Realty. Franklin Realty was a wholly-owned subsidiary of Franklin Financial Services, which in turn was a wholly-owned subsidiary of FSA. Pfost contends that Franklin Realty's only involvement in the Projects was to evaluate and make recommendations regarding the viability of each proposed project to the Senior Loan Committee of FSA. Thereafter, the Senior Loan Committee voted to accept or reject the recommendations of Franklin Realty on each Project and issued its own recommendations to the FSA Board of Directors. Pfost contends the FSA Board of Directors, of which he was not a member, made the ultimate decision regarding FSA's involvement in each project. Pfost contends that because all decisions regarding the filing of any lawsuits for claims on behalf of FSA were under the sole discretion of the FSA

Board of Directors, of which he was not a member, the adverse domination doctrine should not apply to toll claims against him. Pfost additionally contends that the adverse domination doctrine should not apply to him because he was not a control person with the authority of influence to prevent FSA from filing suit against him.

Several courts have rejected efforts to restrict adverse domination claims to claims against directors. In *Federal Sav. and Loan Ins. Corp. v. Williams*, 599 F.Supp. 1184 (D.Md.1984), the court specifically rejected as "legally unavailing" the argument that adverse domination should not apply to a defendant who had not been a member of the institution's board of directors. *Id.* at 1194. In rejecting the argument, the court looked at the facts and circumstances and concluded the board would not have sued this particular defendant, even after her departure from the institution, because the controlling wrongdoers might have faced defenses or counterclaims exposing their own wrongdoing. *Id.* Whatever information may have come to the attention of the wrongdoers was of no benefit to the institution itself since those in control would not act on such information. *Id.* at 1195.

More recently, in *Resolution Trust Corp. v. Gardner*, 798 F.Supp. 790 (D.D.C.1992), the defendant argued that since he was neither an officer nor a director of the institution or any related entities, the statute of limitations should not be tolled. The court rejected the argument, stating:

Defendant attempts to unduly restrict the reach of the adverse domination doctrine. Contrary to defendant's contention, the doctrine has been applied in cases involving defendants who were neither officers nor directors of the corporation.

*Id.* at 795 (citing cases).

Pfost argues that the doctrine of adverse domination should be narrowly interpreted, and should not be extended to "noncontrol persons." However, this court believes that the rationale behind the adverse domination doctrine logically leads to application of the doctrine against certain "noncontrol" persons. If these persons assisted or jointly participated with the controlling directors in

committing wrongful acts, the same self interest reasons that would prevent a director from suing another director would prevent him or her from bringing an action against the noncontrol person. In such a circumstance, extension of the adverse domination doctrine to a noncontrol person would be proper. The court finds that dismissal or summary judgment is not warranted simply because Pfost was not a director of FSA, and therefore presumably was a "noncontrol person." Pfost's motion is therefore denied on this ground.

■ On the other hand, the court finds that Pfost's argument that the counts against him should be dismissed for failure to state a claim has merit. Counts I–III of the complaint are brought against eleven defendants. The ten defendants other than Pfost were directors of FSA. Pfost is identified in the complaint merely as "a director and officer of Franklin Realty Corporation from 1984 to 1987."[4] Count I is a breach of fiduciary duty claim and Counts II and III are for negligence. The traditional elements of a claim for negligence are defendant's duty to plaintiff, his or her breach thereof, and the injury to plaintiff that results from such breach, together with a statement of the resulting damage. "These elements are as essential under modern pleading as they ever were, and a complaint should indicate that each of the elements is present in order to be sufficient." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1249 (1990).

All of the factual allegations of the complaint underlying plaintiff's claims relating to violations of real estate lending standards and applicable laws, regulations and/or guidelines are alleged to have been committed by FSA. While allegations against FSA may be sufficient to create liability on the part of the directors of FSA, the court does not believe this is sufficient with regard to Pfost, who is not alleged in the complaint to be a director or even an officer of FSA. There are no allegations in the complaint that Pfost is liable for the actions of FSA under an agency or any other theory. The complaint does nothing more than allege

wrongful acts as to FSA and proceed to lump Pfost into the collective group responsible for such wrongs.

Because the court finds that the complaint fails to allege any duty defendant Pfost had (fiduciary or otherwise), or any actions taken by Pfost that breached any such duty, Pfost's motion to dismiss Counts I–III for failure to state a claim is granted. This dismissal is without prejudice. The RTC may file an amended complaint within the time limit prescribed in the conclusion section of this order articulating what it claims Pfost has done wrong.

*IV. Counts IV–IX, Subsidiary Claims*

■ Counts IV–IX involve claims for breach of fiduciary duty, negligence, negligence per se, and breach of implied contract against six of the directors of FSA involving losses through broker-dealer subsidiaries of FSA. Franklin Financial Services ("FFS") was a wholly-owned subsidiary of FSA. Between 1986 and 1988, FFS acquired three investment banking and securities brokerage businesses, which became wholly-owned subsidiaries of FFS.

Defendants contend that the counts should be dismissed because the RTC is impermissibly seeking a judgment for losses suffered by other corporations. Defendants argue that FFS and the three subsidiary corporations are the proper parties to bring an action for losses they suffered and the RTC, which assumes only the rights of FSA, has no standing to bring an action for losses suffered by the subsidiary corporations.

In support of their position, defendants cite two cases in which courts dismissed suits filed by the FDIC against third persons alleging that actions of those third persons had caused damages to wholly-owned subsidiaries of the failed institution that had been taken over by the FDIC. *F.D.I.C. v. Thompson & Knight*, 816 F.Supp. 1123 (N.D.Tex.1993); *F.D.I.C. v. Day*, 148 F.R.D. 160 (N.D.Tex. 1993). However, the court does not find that the facts of those cases correspond with the claims the RTC is attempting to make in this case.

4. Franklin Realty Corporation was a second-tier subsidiary of FSA.

In the cases cited by defendants, the FDIC was attempting to sue third persons for actions by those third persons that caused damages to a wholly-owned subsidiary. In this case, the RTC is suing the directors of FSA on breach of fiduciary duty and negligence theories. Although defendants assert that the RTC seeks damages for losses suffered by subsidiaries rather than FSA itself, upon analyzing the complaint the court does not find this necessarily to be the case. In these counts the RTC is attempting to sue the directors of FSA for breaches of their duties to FSA through wrongful conduct in the investing of FSA funds and alleges damages to FSA through economic losses in each of the transactions. It is well established that directors have a duty of care to the institution which has extended in this circuit to decisions regarding making and monitoring investment decisions by the institution. *See Hoye v. Meek,* 795 F.2d 893, 895–6 (10th Cir.1986). Because it does not appear to the court at this time that the RTC can prove "no set of facts" in support of its claim that would entitle it to relief, defendants' motions to dismiss Counts IV–IX are denied.

### V. Counts X–XIII, Dividend Payment Claims

In Counts X–XIII of the complaint, the RTC asserts claims based on alleged unlawful payments of dividends made by the FSA directors. Count X is a statutory claim based on K.S.A. 17–5412. Counts XI, XII and XIII are for breach of fiduciary duty and implied contract, negligence, and negligence per se against the directors in connection with the dividend payments.

In each of Counts X–XIII, the RTC alleges that the dividend payments made by the FSA directors were unlawful because they were made "at a time when FSA's net worth, determined on a fair market value basis, was negative." Consequently, the unlawfulness of the dividend payments in each of the four counts is wholly premised on the RTC's conclusion that to determine the lawfulness of dividend payments Kansas law requires capital, net worth, and earnings be "determined on a fair market value basis." The RTC contends that the statutory language of K.S.A. 17–5412, the Kansas Supreme Court's holding in *Salina Mercantile Co. v. Stiefel,* 82 Kan. 7, 107 P. 774 (1910), and various references to corporation law treatises compel a conclusion that Kansas law requires such a fair market value analysis.

The Kansas statutory provisions governing dividend payments by savings and loan institutions are K.S.A. 17–5412 and K.S.A. 17–5423. The statutes read in relevant parts as follows:

> The board of directors of any association formed under the provisions of this or any previous act may from time to time declare dividends from the earnings of the association to be paid or credited in such manner as may be provided in the bylaws, but no dividends shall be declared except from the earnings and undivided profits of the association. If the board of directors shall declare, credit or pay any dividend when there is an impairment of capital they shall be jointly and severally liable to the extent of the dividend so declared, credited or paid for all the debts of the association then existing or that shall be thereafter while they shall respectively continue in office.

K.S.A. § 17–5412.

> No cash dividends shall be declared on guarantee stock by any association unless it meets the net worth requirements for insurance of accounts by the federal savings and loan insurance corporation or such other insurer approved by the state commissioner of insurance under K.S.A. 17–5826, and amendments thereto. Subject to the provisions of the savings and loan code and acts amendatory thereof or supplemental thereto, guarantee stock shall be entitled to such rate of dividend, if earned, as fixed by the board of directors. Stock dividends may be payable out of otherwise unallocated surplus.

K.S.A. § 17–5423.

The RTC argues that because the phrases "earnings" in section 17–5412 and "if earned" in section 17–5423 are not statutorily defined, the meaning of the terms must be discerned from case law and other authorities. The RTC contends that these authorities, specifi-

cally the court's decision in *Salina Mercantile Co. v. Stiefel,* 82 Kan. 7, 107 P. 774 (1910), mandate the conclusion that in measuring an institution's earnings, its assets and liabilities must be taken into account at their fair market values, rather than at the values at which they were carried on the institution's books for accounting, tax, or other purposes. The court does not agree.[5]

The court finds that K.S.A. 17–5412 and 17–5423 do not require a net worth determination based on a fair market value basis. The language of K.S.A. 17–5412 does not expressly set out that a savings association's ability to pay dividends must be analyzed on a fair market value basis. The court finds that indeed such an interpretation would create severe practical problems for the industry. Every time an institution desired to pay dividends, it would be required, in effect, to conduct a liquidation analysis of its assets. Such an analysis would conceivably require separate appraisals of all the properties owned by an institution. Such appraisals can be highly subjective, with the fair market value of specified property often resting in the eyes of the appraiser. The court believes that such an analysis, because of its potentially subjective nature, would not necessarily provide great protection to the public.

If the Kansas legislature had truly intended that the lawfulness of dividend payments be analyzed under a fair market basis, which is totally at variance with the federal regulations in the area[6] and could result in problems of practicality and subjective valuation, the legislature would have used more specific language in the statute. The Kansas statutes are phrased in accounting terms such as "earnings" and "undivided profits." This court finds it much more likely that the legislature intended net earnings and capital of an institution to be evaluated according to the institution's ability to pay as a going concern, not based on a fair market liquidation analysis. The court therefore finds that Kansas law does not require that an institution's capital, net worth and earnings be determined on a fair market value basis.

Because Counts X–XIII of the complaint all rely on the conclusion that under Kansas law the dividend payments were unlawful because FSA's net worth determined on a fair market value basis was negative, and this court has determined that the law of Kansas does not require such a fair market value basis analysis, Counts X–XIII of the complaint are dismissed. This dismissal is without prejudice, however, to the filing of an amended complaint dealing with these counts. At oral argument on these motions, the RTC stated that they had included the specific reference to fair market value in their complaint only because they believed

5. In *Salina Mercantile,* the corporation obtained a judgment for $4000 representing excess dividend payments that had been made by the corporation to the stockholders. The stockholders, who comprised two of the three directors of the corporation, falsely reported to the other director that the corporation held merchandise of an inflated value. By reporting the inflated value to the third director, when they knew the actual value was less, the defendants were able create the appearance of a surplus in the capital account. This surplus was paid out as a dividend to stockholders. Because of the inflated value ascribed to the merchandise, the dividend resulted in a reduction of paid up capital. *Salina Mercantile,* 82 Kan. at 8, 107 P. 774.

The RTC places special significance on the following language by the court:
In fact the surplus was only $20,148.90, the merchandise being worth $53,818.90, and other property bringing the total assets up to $57,148.90. The defendants knew the actual value of the merchandise....
*Id.*

While the RTC puts strong emphasis on the *Salina Mercantile* case, referring to it as the "seminal Kansas case on the payment of dividends," this court finds it of little value in determining the issue presently before the court. In *Salina Mercantile,* the court was faced with directors who had fraudulently conspired to inflate the assets of the company by padding the value of merchandise held. The court accurately noted that there cannot be a surplus out of which to pay dividends unless assets exceed capital stock after a deduction for expenses and losses. The court found that the fraudulent book value of the asset could not be used in that calculation. The *Salina Mercantile* court did not even address any issues regarding calculations of earnings or undivided profits, let alone discuss these issues in the context of a savings and loan institution. This court does not find that *Salina Mercantile* is instructive in interpreting the meaning of the Kansas dividend statutes.

6. *See* 12 C.F.R. § 567. These regulations rely on a going concern analysis utilizing generally accepted accounting principles.

that to be the proper law of Kansas, and that in any event the dividend payments made by defendants would be unlawful even under other standards. The RTC is free to bring an amended complaint within the time set out below alleging such unlawful payments.

### VI. Counts XIV and XV, Dividend Recovery from Recipients and Transferees

Count XIV of the complaint seeks recovery of dividend payments from recipients of those dividends under a constructive trust theory. In Count XV, the RTC seeks to recover the dividend payments from the recipients pursuant to its powers under 12 U.S.C. § 1821(d)(17)(A). Counts XIV and XV are both premised on the assumption that the initial dividend payments were unlawful because FSA had a negative net worth on a fair market value basis at the time the dividends were declared. Because the court has determined that this is not the standard under Kansas law, and Counts X–XIII have been dismissed, Counts XIV and XV are also dismissed, without prejudice to reassertion in a timely filed amended complaint.

### VII. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** the motion of defendants Ernest M. Fleischer, et al. to dismiss or, in the alternative, for summary judgment (Doc. # 51); defendant Ted Greene, Jr.'s motion to dismiss complaint (Doc. # 54); defendant Thomas Weigand's motion to dismiss or, in the alternative, for summary judgment (Doc. # 55); defendant Duane H. Hall's motion to dismiss or, in the alternative, for summary judgment (Doc. # 59) are granted in part and denied in part. Defendant Ronald L. Pfost's motion to dismiss or, in the alternative, for summary judgment (Doc. # 61) is granted. Counts I–III, the only counts which are brought against defendant Pfost, are dismissed as to him only. Counts X–XV are dismissed as to all defendants. These counts are dismissed without prejudice, and the RTC shall have until July 9, 1993 to file an amended complaint only as to the matters dealt with in those counts. The motions to dismiss are denied as to Counts I–III for all defendants except Pfost, and to Counts IV–

IX as to all defendants. The remaining defendants against whom claims now remain shall file their answers to Counts I–IX of the Complaint on or before July 9, 1993.

**IT IS SO ORDERED.**