No. 72,230

Resolution Trust Corporation, *Plaintiff,* v. James E. Scaletty, Paul LaForge, E. W. Miller, Dr. Charles F. Henderson, Charles J. Scaletty, Tony DeChario, Montie Taylor, James B. Mitchell, and Myrtle Hucke, *Defendants.*

(891 P.2d 1110)

Opinion filed March 17, 1995.

*Donald W. Giffin,* of Spencer Fane Britt & Browne, of Kansas City, Missouri, argued the cause, and *Curtis E. Woods, J. Nick Badgerow, Samuel P. Logan, Michael F. Saunders,* and *Jan P. Helder, Jr.,* of the same firm, were with him on the briefs for defendant, Paul LaForge.

*Lee H. Woodward,* of Woodard, Blaylock, Hernandez, Roth & Day, of Wichita, argued the cause, and *Rachelle Worrall Smith,* of the same firm, and *Neysa L. Day,* of Resolution Trust Corporation, of Kansas City, Missouri, was with him on the briefs for plaintiff Resolution Trust Corporation.

*Charles N. Henson,* of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, was on the brief for *amicus curiae* Kansas Bankers Association.

*Stephen M. Kerwick,* of Foulston & Siefkin, of Wichita, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

McFarland, J.: This case is before the court on two questions certified by the United States Court of Appeals for the Tenth

Circuit pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* The questions are:

1. "Under Kansas law, does an action against corporate directors accrue only when those directors no longer control or 'adversely dominate' the corporation?"
2. "If so, does adverse domination delay accrual or toll the statute of limitations when the directors were guilty only of negligence, gross negligence, or breach of fiduciary duty?"

The facts are set forth in the certification order as follows:

"BACKGROUND

"LaForge was a director of the state-chartered Peoples Savings & Loan Association of Parsons, Kansas (PSLA). In April and May 1983, the PSLA directors approved participations in three loans for condominium projects in Texas. The Resolution Trust Corporation (RTC) claims that the directors' approval was negligent, grossly negligent, and a breach of fiduciary duty. They allege in particular that the directors lacked the expertise to make reasonable judgments about whether to buy such participations; relied upon unverified representations of the loan originator or broker; did not require and analyze sufficient information to make a reasonable decision; did not establish procedures to monitor the analysis of participation loans by PSLA's officers; and did not monitor or evaluate appraisal reports.

"LaForge resigned in February 1985, after the board received and reviewed a joint federal and state examination report criticizing two of the three participations. Two of the remaining seven directors also resigned after LaForge. However, the board filled only one vacancy: in January 1986, Beulah Neff, a longtime PSLA employee, became a director. Apparently the rest of the board remained the same at least until the Federal Savings & Loan Insurance Corporation (FSLIC) became the conservator of PSLA on February 28, 1989. The RTC subsequently became receiver of PSLA in May 1990. The RTC in its corporate capacity acquired this claim and filed its complaint on February 27, 1992."

The underlying action and its procedural history may be described and summarized as follows:

In its complaint, the Resolution Trust Corporation (RTC) sought damages under Kansas common law from the bank officers and directors of PSLA for negligence, gross negligence, and breach of fiduciary duties stemming from PSLA's purchase of the three loan participations which were approved by the board of directors in April and May 1983. A participation loan is generally originated by a bank, savings and loan association, or other financial institution which finds other lenders willing to participate

in the funding of the loan, ordinarily for a fee which is paid by the borrower. The complaint makes no allegations of fraud, insider loan, self-dealing, or any profit-making by any defendant.

On July 30, 1992, LaForge filed a motion for summary judgment, contending that the action against him was barred by the Kansas two-year statute of limitations, K.S.A. 60-513. On September 30, 1992, the district court held that the action against LaForge was not barred because the principle of adverse domination, as articulated in *Farmers & Merchants Nat. Bank v. Bryan*, 902 F.2d 1520 (10th Cir. 1990), and other federal cases, tolled the Kansas statute. The district court decision herein is *Resolution Trust Corp. v. Scaletty*, 810 F. Supp. 1505 (D. Kan. 1992). On July 30, 1993, LaForge filed a second motion for summary judgment, which was denied on October 29, 1993. On January 19, 1994, LaForge's petition to take an interlocutory appeal was granted. In due course, the certification order was issued herein by the Tenth Circuit.

Before proceeding to the discussion of the certified questions, one preliminary matter needs resolution. RTC has filed a motion to strike an issue raised by LaForge in a letter to the court dated January 20, 1995, under authority of Supreme Court Rule 6.09(b) (1994 Kan. Ct. R. Annot. 34). This issue (whether knowledge by regulators commences the statute of limitations) might be construed as being included within the bare language of Certified Question No. 1. However, as noted by RTC, this issue was not before the Tenth Circuit, although it had been argued at one time to the district court. Further, a reading of the Tenth Circuit's discussion in the order of certification as to why Question No. 1 was being asked precludes a conclusion that the knowledge of regulators issue was intended to be included. We conclude the motion to strike should be granted.

## QUESTION NO. 1

The adverse domination doctrine operates to toll the running of the statute of limitations when the directors or officers charged with wrongful conduct dominate the board of the corporation to the extent that there are no directors who have knowledge of the

facts giving rise to possible liability who could have or would have induced the corporation to sue. *Farmers & Merchants Nat. Bank v. Bryan*, 902 F.2d at 1523. The doctrine arises due to the control of the institution by culpable officers and directors, which precludes the possibility of filing suit because these individuals cannot be expected to sue themselves or to initiate any action contrary to their own interests. *Resolution Trust Corp. v. Fleischer*, 826 F. Supp. 1273, 1276 (D. Kan. 1993).

The principle underlying the doctrine of adverse domination was articulated in *Federal Deposit Ins. Corp. v. Hudson*, 673 F. Supp. 1039, 1042 (D. Kan. 1987), as follows:

"This approach reasons that as long as a bank is dominated by the same wrongdoers against whom a cause of action exists, the statute of limitations is tolled. The rationale behind this theory is that the wrongdoers cannot be expected to bring an action against themselves. Only when a new entity takes control of the bank, be it a receiver or a new board of directors, can suit against the wrongdoers be brought as a practical matter."

There are two major versions of the doctrine: the "disinterested majority" and the "single disinterested director" versions. In *Hecht v. Resolution Trust*, 333 Md. 324, 635 A.2d 394 (1994), the different versions were described. In the disinterested majority version, "claims by a corporation do not accrue and/or limitations do not run . . . until there exists a disinterested majority of nonculpable directors." 333 Md. at 339. Control of the institution by culpable directors and officers gives them the power to withhold information concerning their wrongful activities, without which shareholders have no meaningful opportunity to bring suit. This version operates under a presumption that the culpable directors and officers cannot be expected to sue themselves or institute any action contrary to their own interests. See *Federal Deposit Ins. Corp. v. Bird*, 516 F. Supp. 647, 652 (D.P.R. 1981); *Hecht*, 333 Md. at 340. Limitations do not begin to run against an officer who resigns if the other culpable directors remain in control of the organization after the resignation because the remaining directors are unlikely to initiate action which could reveal their own wrongdoing. *Federal Sav. and Loan Ins. Corp. v. Williams*, 599 F. Supp. 1184, 1193 (D. Md. 1984).

Under the single disinterested director version, limitations would not run only so long as there was no one with knowledge of facts giving rise to possible liability who could or would have induced the corporation to bring an action. *Hecht,* 333 Md. at 340-41; see *Bryan,* 902 F.2d at 1522-23; *Fleischer,* 826 F. Supp. at 1276. Pursuant to this version, plaintiff has the burden of showing that the culpable directors had full, complete, and exclusive control of the corporation and must negate the possibility that an informed director or shareholder could have induced the corporation to institute suit. *Bryan,* 902 F.2d at 1522-23; see *Fleischer,* 826 F. Supp. at 1278.

Who has the burden of proof is one of the significant differences between the two versions. Under the disinterested majority version, the plaintiff enjoys a presumption that the course of action does not accrue so long as the culpable directors remain in the majority. Under the single disinterested director version, the plaintiff has the burden of negating that a single informed director could have induced the corporation into taking action.

The origin of the adverse domination doctrine remains obscure. In *Federal Deposit Ins. Corp. v. Hudson,* 673 F. Supp. at 1042, Judge Saffels described the doctrine as the "more modern" method for determining when a cause of action accrues against a bank's officers and directors. Judge Saffels cited cases arising from Depression-era bank failures where the cause of action was held to accrue when the bad loans were made. He then stated:

"The U.S. District Court in Puerto Rico took the lead in the acceptance of the 'adverse domination' theory. In *FDIC v. Bird,* 516 F. Supp. 647 (D.P.R. 1981), the court rejected the defendant's advocation of the pre-Depression law of *Corsicana* and *Curtis.* Instead, the court recognized 'the realities of the shareholders' position, that, without knowledge of wrongful activities committed by directors, shareholders have no meaningful opportunity to bring suit.' 516 F. Supp. at 651. The court reasoned it would deny logic to assume that the same individuals who allegedly committed a wrong would bring suit against themselves, or to assume that despite the directors' control of the institution, the stockholders would have sufficient knowledge of the wrongdoing to bring suit themselves. Control of the institution implies control of information.

"The court went on to question the value of the pre-Depression cases as legal precedent.

"One need only recall the financial and economic disaster which befell the nation in 1929 and which led to various nationwide programs, including creation of the FDIC, (footnote omitted), to realize that earlier doctrines are suspect and subject to reexamination. Reference to more recent precedents is enlightening. In 1933 a new philosophy of corporate relationships and responsibilities was expressed . . . [t]he emphasis has shifted from a right of shareholders to inspect corporate records and affairs to a duty of corporate managers to disclose. 516 F. Supp. at 651-52.

"Other federal district courts followed the lead of the Puerto Rican court in *Bird*, recognizing the historical posture of the pre-Depression cases and the realities of corporate operation today." 673 F. Supp. at 1042.

Regardless of the origin of the doctrine, one fact is clear. Most reported cases referring to the doctrine were decided in the 1980's and '90's and involve failed banks or savings and loans. Plaintiffs in the action wherein the doctrine is referred to are most likely to be the FDIC, FSLIC, or RTC. This is not surprising. Improvident loans cause financial institutions to bleed internally. The institutions seldom succumb quickly. They linger. Many years usually pass between the dates of the making of improvident loans and their cumulative effect of bringing the institution to its knees. More time goes by before there is a federal agency ready to file suit. Given the customarily short statute of limitations for torts, generally speaking, the statute would run before the action could be brought by the federal agency unless some special doctrine or exception exists which tolls the statute. Adverse domination has been widely recognized in many jurisdictions as the vehicle to overcome a statute of limitations defense in such situations. Kansas has not previously addressed the question of whether the doctrine of "adverse domination" is available in Kansas. Certified Question No. 1 asks that question.

K.S.A. 60-513(a)(4) sets a two-year statute of limitations for RTC's claims of negligence, gross negligence, and breach of fiduciary duty. That provision provides a two-year statute of limitations for "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated."

As noted by the Tenth Circuit in its certification order herein:

"The RTC filed its complaint within the time allowed by the federal statute of limitations. See 12 U.S.C. § 1821(d)(14). However, the federal statute of

limitations will not revive claims that have already expired before the RTC acquires them. *FDIC v. Regier Carr & Monroe*, 996 F.2d 222, 225 (10th Cir. 1993). Federal common law determines when federal claims accrued, even if the court borrows a state limitations period. See *Farmers & Merchants Nat'l Bank v. Bryan*, 902 F.2d 1520, 1522-23 (10th Cir. 1990); *Ebrahimi v. E. F. Hutton & Co.*, 852 F.2d 516, 520-21 (10th Cir. 1988). State law, on the other hand, determines when state law claims accrued and whether they expired before the RTC took over. *FDIC v. Cocke*, 7 F.3d 396, 400 (4th Cir. 1993), *petition for cert. filed*, 62 U.S.L.W. 3659 (U.S. Mar. 21, 1994) (No. 93-1483); *FDIC v. Dawson*, 4 F.3d 1303, 1307, 1309 (5th Cir. 1993) (observing that state law determines in every respect whether state law claims expired before the FDIC acquired them), *cert. denied*, No. 93-1486, 1994 WL 101161 (U.S. June 13, 1994); *Regier Carr & Monroe*, 996 F.2d at 225; *cf. O'Melveny & Myers v. FDIC*, No. 93-489, 1994 WL 249558, at °5 (U.S. June 13, 1994) ('[Section] 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S&L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise.'). The RTC's claims against LaForge are state law claims related to a state-chartered institution. Kansas law therefore determines when those claims accrued and whether they expired before the RTC acquired them.

"Kansas law allowed PSLA two years to bring these claims against the directors. Kan. Stat. Ann. § 60-513(a)(4) (1983). The injury occurred when PSLA bought the loan participations in 1983. See *Bryan*, 902 F.2d at 1522. Therefore the claims against the directors expired long before the FSLIC become conservator in 1989, unless something tolled the statute or delayed the accrual of the claims.

"If 'the fact of injury [was] not reasonably ascertainable' until after the directors' negligence caused 'substantial injury,' the action did not accrue 'until the fact of injury [became] reasonably ascertainable to the injured party.' Kan. Stat. Ann. § 60-513(b). If the directors' knowledge is imputed to PSLA, the injured party could have 'reasonably ascertained' the fact of injury by early 1985 at the latest, when the board received the critical examination and LaForge resigned. The statute of limitations therefore still would have expired well before the FSLIC became conservator."

K.S.A. 60-513(b) provides the framework for determining when the cause of action accrues for the purpose of starting the two-year period:

"Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to

the injured party, but in no event shall an action be commenced more than ten (10) years beyond the time of the act giving rise to the cause of action."

In applying the language of the statute, two alternatives are recognized, depending on the facts of the case. Under the first alternative, the cause of action "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury." K.S.A. 60-513(b); see *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, Syl. ¶ 1, 519 P.2d 661 (1974).

Under the second alternative, "if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. 60-513(b). This concept has been called the "discovery rule," *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 94, 490 P.2d 649 (1971), and has been applied in areas of medical malpractice and products liability where the injury from the negligent act may not become apparent until some time after the act actually occurred. *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 265, 806 P.2d 997 (1991). A variation of the discovery rule has been found to apply in legal malpractice tort cases. See, *e.g.*, *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 716 P.2d 575 (1986).

This second alternative may also be viewed as a statute of repose. See *A.S.I. Inc. v. Sanders*, 835 F. Supp. 1349 (D. Kan. 1993). "A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though a cause of action may not have yet occurred. It is substantive." *Harding v. K. C. Wall Products, Inc.*, 250 Kan. 655, Syl. ¶ 6, 831 P.2d 958 (1992). Whether an accrual or a tolling doctrine is involved, however, may be a distinction without a difference, since the result is the same. As the Maryland appellate court stated:

"Although we recognize, and will address, this distinction for purposes of the arguments herein, it has not been recognized by the majority of courts discussing the doctrine of adverse domination. Where adverse domination has been labeled an accrual doctrine and where it has been termed a tolling doctrine the application has been the same: to prevent limitations from running so long as a

corporation is controlled by individuals against whom the corporation would have a cause of action." *Hecht v. Resolution Trust*, 333 Md. at 339 n.11.

A corporation is legally a "person," but it has no capability of action except through others. Knowledge to a corporation can only come through its officers, directors, or employees, as the case may be. When does a corporation have knowledge under K.S.A. 60-513(b) that it has been wronged by its directors? The purpose of commencing the running of the statute when the injury is reasonably ascertainable is to afford the injured party a time period to take legal action against the party or parties who caused the injury. If the parties who caused the injury control the corporation, the corporation cannot take action to make itself whole unless those individuals who would be defendants in the action instigate and authorize the action. If the potential defendants take no such action, the corporation has no power to act.

In the recent case of *Clark v. Milam*, 192 W. Va. 398, 402, 452 S.E.2d 714 (1994), also arising on a very similar certified question, the highest West Virginia court stated:

"We agree with the Receiver that a corporate plaintiff cannot 'discover' injuries to the corporation caused by those who control the corporation. Thus, and in accordance with our overwhelming precedent, the discovery rule requires that the limitation periods on tort claims by a corporate plaintiff or its successor (here the Receiver) be tolled when the corporation has been prevented from 'knowing' those claims existed. Generally, a corporation 'knows,' or 'discovers,' what its officers and directors know. But when officers and directors act against the interests of the corporation, their knowledge, like that of any agent acting adversely to his principal, is *not* imputed to the corporation. [Citations omitted.]"

We conclude that the doctrine of adverse domination is applicable in Kansas for determining when, under K.S.A. 60-513(b), this fact of injury to the corporation by its directors was readily ascertainable by the corporation. In so doing, we are not judicially creating an exception to the statute, but are simply determining the test to be applied in determining when certain injuries are readily ascertainable by the corporation under the statute. This determination is consistent with the language and intent of the statute and our prior case law. We also conclude that the disinterested majority version of the doctrine is more appropriate to the language and purpose of the statute. This version is better

suited for determining when the fact of injury was readily ascertainable by the corporation.

## QUESTION NO. 2

LaForge, as well as *amici curiae* Kansas Bankers Association and Kansas Association of Defense Counsel, contend that if the theory of adverse domination is adopted, it should not be made applicable in cases such as this one, where the liability of corporate officers is based merely upon negligence and not fraud, self-dealing, or intentional wrongdoing. Their rationale may be best summarized in a recent Fifth Circuit case, *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1312-13 (5th Cir. 1993), *cert. denied* 114 S. Ct. 2673 (1994), where adverse domination was held not to apply in negligence cases:

"We do not believe that Texas courts would extend the 'very narrow doctrine,' [citation omitted] of adverse domination to cases in which the wrongdoing by a majority of the board amounts to mere negligence. To do so would effectively eliminate the statute of limitations in all cases involving a corporation's claims against its own directors. Taking our own case as a paradigm, it could almost always be said that when one or two directors actively injure the corporation, or profit at the corporation's expense, the remaining directors are at least negligent for failing to exercise 'every precaution or investigation.' [Citation omitted.] If adverse domination theory is not to overthrow the statute of limitations completely in the corporate context, it must be limited to those cases in which the culpable directors have been active participants in wrongdoing or fraud, rather than simply negligent.

. . . .

"The facts of the instant case demonstrate that the adverse domination theory is inappropriate when the majority of the board is merely negligent. The FDIC's own evidence tended to show that most of TIB's directors may have been negligent in failing to supervise the lending functions. Yet, at the same time, the board never concealed its 'serious deficiencies' from examination by the OCC or anyone else. Even after the OCC notified TIB's board of its shortcomings in supervising TIB's lending function, there is no evidence to suggest that an organized majority coalesced to prevent any other parties from discovering the problems. Thus, the danger of fraudulent concealment by a culpable majority of a corporation's board seems small indeed when the culpable directors' behavior consists only of negligence, and the presumption of such concealment that underlies the adverse domination theory is unwarranted." 4 F.3d at 1312-13.

LaForge cites a number of recent federal cases which have embraced the theory of adverse domination but refused to extend

it to actions involving mere negligence and breach of fiduciary duty. *Resolution Trust Corp. v. Seale*, 13 F.3d 850, 854-55 (5th Cir. 1994) (applying Texas law); *F.D.I.C. v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993), *cert. denied* 130 L.Ed 2d 12 (1994) (applying Virginia law); *F.D.I.C. v. Dawson*, 4 F.3d at 1312-13 (applying Texas law); *Resolution Trust Corp. v. Farmer*, 865 F. Supp. 1143, 1157 (E.D. Pa. 1994) (applying Pennsylvania law).

RTC's position is that withholding the reach of adverse domination to cases involving negligence and breach of fiduciary duty would carve out unjustified special exceptions from the statutory discovery rule, K.S.A. 60-513, for corporate officers and directors. RTC reasons that K.S.A. 60-513, read in its entirety, undermines LaForge's position. RTC points out that the statute already has a separate provision for cases dealing with fraud: K.S.A. 60-513(a)(3). This is not such a case. Fraud or other wrongdoing has not been alleged. Rather, this is a 60-513(a)(4) case, which embraces 60-513(b). Since we have routinely applied 60-513(b) to delay the accrual of negligence and breach of fiduciary duty claims such an exception for corporate officers and directors would be illogical and unjustified according to RTC. See, *e.g.*, *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991) (contractor negligence); *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257 (legal malpractice); *Cleveland v. Wong*, 237 Kan. 410, 701 P.2d 1301 (1985) (medical malpractice); *Bick v. Peat Marwick & Main*, 14 Kan. App. 2d 699, 799 P.2d 94, *rev. denied* 247 Kan. 703 (1990) (accounting malpractice).

As previously noted, the recent deluge of savings and loan association problems have resulted in many jurisdictions being asked by federal courts on certified questions what the law of the particular state is relative to adverse domination. Counsel for the parties herein are to be complimented on the in-depth briefing encompassing decisions from other jurisdictions and new opinions. Some jurisdictions reach their decision by crafting a new exception to the existing statute of limitations. Often the decision involves interpreting or modifying existing case law. In such circumstances, a court has considerable latitude to consider public policy and fine tune what it believes is the most appropriate form

the rule should take and create limitations thereon where deemed appropriate. We, however, are not writing on a blank piece of paper herein. Our role is limited to determining when, under K.S.A. 60-513(b), the injury to a corporation by its directors is readily ascertainable to the corporation. In this narrow role there is no legal basis for us to pick and choose among negligence, gross negligence, or breach of fiduciary duty claims. The same rule must apply to all three types of claims unless the rule is legislatively modified. We conclude the adverse domination doctrine is applicable to all three types of claims. If exceptions are to be made, the legislature must make them.

Six, J., not participating.

Robert H. Miller, C.J., Retired, assigned, concurring and dissenting: The court, by this opinion, is "enacting" an exception to a Kansas statute of limitations, K.S.A. 60-513, an exception that will have far-reaching consequences. It will be of vital interest and importance to the members of the boards of directors of all Kansas banks, financial institutions, and corporations. While the exception is, it seems to me, fully justified in cases of fraud, self-dealing, and intentional wrongdoing, I see no reason to extend it to instances of mere negligence. I would follow the well-reasoned opinion of the United States Court of Appeals for the Fifth Circuit in *F.D.I.C. v. Dawson*, 4 F.2d 1303 (5th Cir. 1993), *cert. denied* 114 S. Ct. 2673 (1994), cited and quoted in this opinion.