**RESOLUTION TRUST CORPORATION,
Plaintiff,**

v.

**Louis W. GRANT, Jr., Charles B. Grant, J. Lawrence Mills, Jr., Keith Gollust, Paul E. Tierney, Jr., Edward L. Jacoby, Rod L. Reppe, Donald Bergman, William M. Brumbaugh, Edward H. Hawes, James R. Malone, Robert B. Riss, Robin K. Buerge, W.R. Hagstrom and David M. Moffett, Defendants.**

No. 84866.

Supreme Court of Oklahoma.

June 27, 1995.

Douglas N. Gould, Donna N. Blakley, Jon Epstein, Oklahoma City, Lyle S. Vaughn, David L. Thomas, Karen Eby, Oklahoma City, Alan R. Clever, Overland Park, KS, for plaintiff, Resolution Trust Corp.

Sam P. Daniel, Jon E. Brightmire, Tulsa, for defendants, Louis W. Grant, Jr. & Charles B. Grant.

Tony M. Graham, Tulsa, for defendants, Keith R. Gollust & Paul E. Tierney, Jr.

Dwayne C. Pollard, Tulsa, for defendants, J. Lawrence Mills, Jr. & W.R. Hagstrom.

Edward L. Jacoby, Tulsa, pro se.

KAUGER, Vice Chief Justice:

Two issues are presented by the questions certified:[1] 1) whether the theory of adverse domination operates to toll the statute of limitations in Oklahoma; and 2) whether application of the doctrine of adverse domination delays accrual or tolls the statute of limitations on claims of negligence, gross negligence, breach of fiduciary duty, or breach of contract against corporate officers and directors while the wronged corporation is controlled by a majority of culpable directors and officers. We find that the adverse domination doctrine may apply to situations involving fraudulent conduct exercised while a wronged corporation is controlled by a majority of culpable directors and officers.[2]

## FACTS

The plaintiff, Resolution Trust Corporation (Resolution Trust), was appointed receiver of Sooner Federal Savings and Loan Association (Sooner) on November 16, 1989, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1811, et seq. On November 13, 1992, Resolution Trust filed suit against fifteen of Sooner's former directors[3] alleging that unsound banking practices resulted in a loss to Sooner of approximately $50 million. Resolution Trust asserted claims for negligence, gross negligence, breach of contract and breach of fiduciary duty against the directors for acts and omissions relating to more than thirty-five loan transactions funded between 1982 and 1988. The directors were not charged with fraud, fraudulent concealment, misappropriation, self-dealing or self-enrichment.

Asserting that Resolution Trust's claims were barred by the two-year limitation of 12 O.S.Supp.1994 § 95(3),[4] the directors moved to dismiss Resolution Trust's complaint with respect to loans made before November 15,

1. Title 20 O.S.1991 § 1602 provides in pertinent part:
   "The Supreme Court ... may answer questions of law certified to it by ... a United States District Court ... when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decision of the Supreme Court ... of this state."

2. Our adoption of the doctrine of adverse domination as part of Oklahoma law should not be read to preclude a non-culpable director/shareholder from instituting a derivative action under the proper circumstances. The general rules governing a derivative action were outlined in *Hargrave v. Canadian Valley Elec. Coop., Inc.,* 792 P.2d 50, 54–55 (Okla.1990). The opinion provides in pertinent part:
   "... Ordinarily before a court will entertain an action brought by shareholders, the shareholders must first show that they sought relief through corporate channels without success. The exception to this rule is when any request for action within the corporation would have been futile. A demand on the board of trustees or directors should not be required prior to institution of a derivative action if the allegations in the petition permit the inference by the court that the trustees or directors upon whom demand would be made lack the 'requisite disinterestedness to determine fairly whether the corporate claim should be pursued.' The purpose behind this exception is to allow the

trustees or directors of the corporation the opportunity to 'occupy their normal status as conductors of the corporation's affairs.' Whether or not an action would have been futile depends on the facts and circumstances of each case, and lies with the discretion of the trial court. In making this determination, the court should consider 'whether a demand on the directors would be likely to prod them to correct a wrong.'
   Such 'demand is presumptively futile where the directors are antagonistic, adversely interested, or involved in the transactions attacked....'" (Citations omitted.)

3. The defendants, Louis W. Grant, Jr., Charles B. Grant, J. Lawrence Mills, Jr., Keith R. Gollust, Paul E. Tierney, Jr., Edward L. Jacoby, Rod L. Reppe, Donald Bergman, William M. Brumbaugh, Edward H. Hawes, James R. Malone, Robert B. Riss, Robin K. Buerge, W.R. Hagstrom and David M. Moffett, are referred to collectively as directors.

4. Title 12 O.S.Supp.1994 § 95(3) provides:
   "Within two (2) years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

1987.[5] In opposition to the motion to dismiss, Resolution Trust argued that the cause did not accrue or that the limitations period was tolled while Sooner was adversely dominated by its directors. Finding no Oklahoma precedent to resolve the questions of law, the trial court certified two questions to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 § 1601 et seq., on January 9, 1995;[6] and the simultaneous briefs of the parties were filed on March 1, 1995.

5. Only two of the thirty-eight loans were made after November 15, 1987.

Title 12 U.S.C. § 1821(d)(14) (1994) provides:
**"Statute of limitations for actions brought by conservator or receiver**
**(A) In general**
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
(i) in the case of any contract claim, the longer of—
(I) the 6–year period beginning on the date the claim accrues; or
(II) the period applicable under State law; and
(ii) in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title), the longer of—
(I) the 3–year period beginning on the date the claim accrues; or
(II) the period applicable under State law.
**(B) Determination of the date on which a claim accrues**
For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.
**(C) Revival of expired State causes of action**
**(i) In general**
In the case of any tort claim described in clause (ii) for which the statute of limitation applicable under State law with respect to such claim has expired not more than 5 years before the appointment of the Corporation as conservator or receiver, the Corporation may bring an action as conservator or receiver on such claim without regard to the expiration of the statute of limitation applicable under State law.
**(ii) Claims described**
A tort claim referred to in clause (i) is a claim arising from fraud, intentional misconduct resulting in unjust enrichment, or intentional misconduct resulting in substantial loss to the institution."

6. In *Farmers & Merchants Nat'l Bank v. Bryan,* 902 F.2d 1520, 1522 (10th Cir.1990), the Tenth Circuit extended limitations crafted under the adverse domination rubric by adopting the doctrine as a part of the federal common law. However, *O'Melveny & Myers v. Federal Deposit Ins. Corp.,* —— U.S. ——, ——, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994) cast doubt on the validity of federal common law. The issue considered in *O'Melveny* involved whether federal or state law governed the tort liability of attorneys providing services to a failed bank. Finding that there is no federal common law and that no policy requires that the federal institution should always win, the Supreme Court held that 12 U.S.C. § 1821(d)(2)(A)(i) places the federal receiver in the shoes of the insolvent banking institution to work out its claims under state law except to the extent that a federal statute provides otherwise. The cause was remanded for a determination of tort liability under California law. *O'Melveny* awoke the federal courts and regulators who had argued for application of a federal statute of limitations to the fact that statutes of limitation are controlled by state law. Even before *O'Melveny* was decided, the Tenth Circuit's reasoning was criticized in *Federal Deposit Ins. Corp. v. Dawson,* 4 F.3d 1303, 1309 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994). The 5th Circuit wrote:

"... We are not convinced that the *Bryan* court is correct in its statement that federal equitable tolling principles apply when federal courts borrow state statutes of limitations.... (T)he first step in the analysis of the limitations issue is whether the applicable state statute of limitations had already expired when the FDIC acquired the claim.... Because this step of the analysis is purely a question of .state law, there is no justification for applying federal equitable tolling principles to pre-receivership events...."

Here, pursuant to *O'Melveny*, application of the doctrine of adverse domination is purely a matter of Oklahoma law. Title 12 U.S.C. § 1821(d)(2)(A)(i) (1989) provides in pertinent part:
**"Powers and duties of Corporation as conservator or receiver**
**(2) General powers**
**(A) Successor to institution**
The Corporation shall, as conservator or receiver, and by operation of law, succeed to—
(i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution

## I.

**UNDER OKLAHOMA LAW, THE DOCTRINE OF ADVERSE DOMINATION MAY OPERATE TO TOLL THE STATUTE OF LIMITATIONS WHILE DIRECTORS WHO ARE GUILTY OF ALLEGED MISCONDUCT EXERCISE CONTROL OVER A CORPORATION.**

■ Adverse domination is an equitable doctrine which tolls statutes of limitations for claims by **corporations against its officers, directors, lawyers and accountants** while the corporation is controlled by those acting against its interests.[7] It applies only in the context of an attempt to avoid the bar of the statute of limitations on a cause of action by a corporation against its wrongdoing officers and directors. The rationale for the principle is that control of the board by wrongdoers precludes the possibility for filing suit, and that the controlling parties cannot be expected to sue themselves or to initiate an action contrary to their own interests.[8] The doctrine applies to delay the accrual of a cause of action or to toll limitations involving claims by a corporate body against its directors for injuries to the corporation.[9] As a practical matter, it is only when a new entity takes control of the bank—a receiver or a new board of directors—that suit can be filed against the wrongdoers.[10]

Resolution Trust relies on *Bilby v. Morton*, 119 Okla. 15, 247 P. 384, 386–87 (1926) for

application of the doctrine of adverse domination.[11] In *Bilby*, a minority stockholder filed suit against the officers of the Indian Land & Trust Company fifteen years after the officers used corporate funds to purchase land in their own names. Within twenty-two months of learning of the fraud, the stockholder filed suit. Although the stockholder had examined the corporation's books earlier, he did not discover the fraud until litigation ensued between the corporation and a creditor. The officers in *Bilby* raised the statute of limitations and laches in defense of the action. Relying on 1921 Compiled Statutes § 185 [12] providing for a two year statute of limitation on actions for fraud accruing on the discovery of the fraudulent act, this Court held that the action was not barred.

The directors insist that *Bilby* is not authority for the adoption of the adverse domination doctrine. Rather, they argue that the case was decided on the basis of fraud—an issue not raised here. Although we agree that the Court relied upon particular statutory language in reaching its decision in *Bilby*, we also recognize that much of the reasoning used mirrors that of the policies supporting adoption of the doctrine of adverse domination. The *Bilby* Court wrote:

"... [The officers] contend that the court erred in holding the action not barred by the statutes of limitation and by laches. In considering this question, it must be observed that the Indian Land & Trust

with respect to the institution and the assets of the institution ..."

**7.** *International Rys. of Central America v. United Fruit Co.*, 373 F.2d 408, 412 (2nd Cir.1967), *cert. denied*, 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967), *reh'g denied*, 389 U.S. 1059, 88 S.Ct. 757, 19 L.Ed.2d 861 (1968); *Resolution Trust Corp. v. Farmer*, 865 F.Supp. 1143, 1151 (E.D.Pa. 1994); *Federal Deposit Ins. Corp. v. Paul*, 735 F.Supp. 375, 377 (D.Utah 1990); *Clark v. Milam*, 192 W.Va. 398, 452 S.E.2d 714, 717 (1994); 3A *Fletcher Cyclopedia Corporations* § 1306.2 (1994).

**8.** *Federal Deposit Ins. Corp. v. Appling*, 992 F.2d 1109 (10th Cir.1993); *Resolution Trust Corp. v. Scaletty*, 810 F.Supp. 1505, 1510 (D.Kan.1992); *Federal Deposit Ins. Corp. v. Ashley*, 754 F.Supp. 179, 183 (D.Kan.1990); *Federal Deposit Ins. Corp. v. Greenwood*, 739 F.Supp. 450, 452 (C.D.Ill.1989).

**9.** *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 635 A.2d 394, 401 (1994).

**10.** *Resolution Trust Corp. v. Scaletty*, see note 8 at 1510, supra; *Hecht v. Resolution Trust Corp.*, see note 9, supra.

**11.** *Bilby v. Morton*, 119 Okla. 15, 247 P. 384, 386–87 (1926) was cited in *Clark v. Milam*, see note 7, supra, by the West Virginia court as an example that the adverse domination doctrine is part of the law in many states and in *Hecht v. Resolution Trust Corp.*, see note 9 at 404, supra, for the same proposition.

**12.** 1921 Compiled Statutes § 185 provides in pertinent part:

"Within two years: ... An action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Company has never been dissolved. It has been inactive for a long time. It is powerless to act for itself, because it is in the hands of its officers who claim it is insolvent, and yet who failed to wind up its business. . . .

The Indian Land & Trust Company could not discover and reveal the fraud of its officers, because it could only speak through them, and it was at all times in the hands of its defrauding officers . . ."

This Court recognized in *Bilby* that while a corporate body is controlled by wrongdoers, stockholders are at a disadvantage to protect their rights and the rights of the corporation. The stockholder could not reasonably expect that the overreaching officers would institute suit on behalf of the very corporation they were defrauding.

Although the doctrine of adverse domination has not been expressly considered by this Court, it has been widely applied by the federal courts.[13] Some of those courts have applied the doctrine as "federal common law" with a greater degree of freedom than that recently allowed them by the United States Supreme Court in *O'Melveny & Myers v. Federal Deposit Ins. Corp.*, —— U.S. ——, ——, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994) holding that federal receivers are placed in the shoes of the insolvent banking institution to work out their claims under state law except to the extend that a federal statute provides otherwise. *O'Melveny* requires that state law rather than a federal common law doctrine be applied.[14] However, many of the federal courts have applied the doctrine consistent with *O'Melveny*'s mandate.[15] The doctrine is also the law in the majority of the states which have considered the issue.[16] The directors rely on 12

**13.** *Federal Deposit Ins. Corp. v. Dawson*, see note 6, supra; *Farmers & Merchants Nat'l Bank v. Bryan*, see note 6, supra; *IIT v. Cornfeld*, 619 F.2d 909, 931 (2nd Cir.1980); *International Rys. of Central America v. United Fruit Co.*, see note 7, supra; *Resolution Trust Corp. v. Smith*, 872 F.Supp. 805, 816 (D.Or.1995); *Resolution Trust Corp. v. O'Bear*, 840 F.Supp. 1270 (N.D.Ind. 1993); *Resolution Trust Corp. v. Kerr*, 804 F.Supp. 1091 (W.D.Ark.1992); *Resolution Trust Corp. v. Gallagher*, 800 F.Supp. 595 (N.D.Ill. 1992), aff'd, 10 F.3d 416, (7th Cir.1993); *Resolution Trust Corp. v. Gardner*, 798 F.Supp. 790 (D.D.C.1992); *Federal Deposit Ins. Corp. v. Howse*, 736 F.Supp. 1437 (S.D.Tex.1990); *Federal Deposit Ins. Corp. v. Greenwood*, 739 F.Supp. 450, 452 (C.D.Ill.1989); *Federal Deposit Ins. Corp. v. Carlson*, 698 F.Supp. 178, 180 (D.Minn. 1988); *Federal Sav. & Loan Ins. Corp. v. Burdette*, 696 F.Supp. 1196 (E.D.Tenn.1988); *Federal Deposit Ins. Corp. v. Hudson*, 673 F.Supp. 1039, 1043 (D.Kan.1987); *Federal Sav. & Loan Ins. Corp. v. Williams*, 599 F.Supp. 1184, 1192 (D.Md.1984); *Federal Deposit Ins. Corp. v. Buttram*, 590 F.Supp. 251, 254 (N.D.Ala.1984); *Federal Deposit Ins. Corp. v. Bird*, 516 F.Supp. 647, 652 (D.P.R.1981); *Saylor v. Lindsley*, 302 F.Supp. 1174 (S.D.N.Y.1969).

Some federal courts adopted the adverse domination theory as federal common law (see, *Farmers & Merchants Nat'l Bank v. Bryan*, see note 6, supra) rather than as an application of state law. The latter appears to be required under the United States Supreme Court's opinion in *O'Melveny & Myers v. Federal Deposit Ins. Corp.*, see note 6, supra. However, several of these courts have applied state law consistent with *O'Melveny*'s mandate. *Resolution Trust Corp. v. Bright*, 872 F.Supp. 1551, 1561 (N.D.Tex.1995); *Resolution Trust Corp. v. Smith*, see this note, supra; *Federal Deposit Ins. Corp. v. Dawson*, see this note, supra; *Federal Deposit Ins. Corp. v. Hudson*, see this note, supra; *Federal Sav. & Loan Ins. Corp. v. Williams*, see this note, supra; *Federal Deposit Ins. Corp. v. Buttram*, see this note, supra.

The Tennessee district court refused to acknowledge the adverse domination theory in absence of recognition of the doctrine by the state court. *Resolution Trust Corp. v. Wood*, 870 F.Supp. 797, 810 (W.D.Tenn.1994). See also, *In re Southeast Banking Corp.*, 855 F.Supp. 353, 357 (S.D.Fla. 1994) holding neither Florida statutes nor Florida case law recognized tolling of limitations period.

**14.** See discussion, note 6, supra.

**15.** See note 13, supra.

**16.** The following courts have adopted the doctrine: *Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 891 P.2d 1110 (1995), (Kan.); *Clark v. Milam*, see note 7, supra; *Hecht v. Resolution Trust Corp.*, see note 9 at 407, supra; *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 885 (Utah 1993). Some of these courts have adopted the concept of adverse domination without so naming it. *Greenleaf v. Profile Cotton Mills*, 235 Ala. 530, 180 So. 582 (1938) (Limitations tolled so long as the defendant remained in control of corporation because the corporation's only means of acquiring knowledge was through the defendant.); *San Leandro Canning Co. v. Perillo*, 211 Cal. 482, 295 P. 1026 (1931) (Limitations did not begin to run against directors' unauthorized payment of commission for sale of stock while they were in full control of corporation.); *Bates Street Shirt Co. v. Waite*, 130 Me. 352, 156 A. 293 (1931) (Statute does not begin to

O.S.Supp.1994 § 95(3) [17] which provides that a cause of action for fraud will not accrue until the fraud is discovered for their argument that all other tort causes of action encompassed within the statute accrue when the injury occurs rather than when the injury is realized. The directors insist that the discovery rule is not applicable to the cause presented because there was notice sufficient here to cause the statute of limitations to run. Under the doctrine of adverse domination, the question of when or if a plaintiff discovered or should have discovered the alleged wrongdoing is one of fact.[18] This issue is not within the question certified, and we are not deciding this factual issue.[19]

■ Exceptions to statutes of limitation are strictly construed and are not enlarged on consideration of apparent hardship or in-

convenience.[20] However, Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury.[21] The rule is applied to delay the running of the statute of limitations. It, much like the doctrine of adverse domination, arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause. The purpose of the rule is to exclude the period of time during which the injured party is reasonably unaware than an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury.[22] Relying on similar discovery principles, federal and state courts have recognized the adverse domination doctrine.[23] The reason-

run where defendant directors are in control of corporation and charged with duty of instituting action against themselves.); *Ventress v. Wallace,* 111 Miss. 357, 71 So. 636 (1916) (Limitations did not run against directors charged with gross negligence during period in which they had exclusive possession and control and either willfully or negligently concealed knowledge of corporation's losses.); *Kahn v. Seaboard Corp.,* 625 A.2d 269 (Del.Ch.1993) (Tolling limitations period on claims in shareholder derivative suit against self-dealing directors where shareholder was unaware of claims against directors.); *Dotlich v. Dotlich,* 475 N.E.2d 331 (Ind.App.1985), *reh'g denied* (1985) (Limitations period tolled until director's misconduct discovered.); *Robert P. Butts & Co. v. Butts Estate,* 119 Ill.App.2d 242, 255 N.E.2d 622 (1970); *Allen v. Wilkerson,* 396 S.W.2d 493 (Tex.Civ.App.1965) (For limitations to run against corporation's right of action against director, there must be disinterested majority of board of directors.); *Warthman v. Manufacturers Trust Co.,* 37 N.Y.S.2d 129 (N.Y.Supp.Div.1940) (Allowing tolling where dominating directors personally profited from misconduct. But see, *INB Nat'l Bank v. Moran Elec. Serv.,* 608 N.E.2d 702 (Ind.App.1993), in which the Indiana court stated that the "presidential domination" theory of tolling a statute of limitation has not been recognized in Indiana.). See also, Annot., "Running of Statute of Limitations Against Action Against Bank Directors or Officers for Making Excessive or Unauthorized Loans," 83 A.L.R. 1204 (1933).

The following courts have rejected the concept: *Department of Banking v. McMullen,* 134 Neb. 338, 278 N.W. 551 (1938) (Statute of limitations not tolled because directors remained in control of bank where no inducement, fraud or concealment charged.); *Mobley v. Russell,* 174 Ga. 843, 164 S.E. 190 (1932) (Statute not tolled in action against directors making excessive loans when

directors remained continuously in control until failure of bank.); *INB Nat'l Bank v. Moran Elec. Serv.,* see this note, supra, and accompanying discussion; *Squire v. Guardian Trust Co.,* 79 Ohio App. 371, 72 N.E.2d 137 (1947).

17. Title 12 O.S.Supp.1994 § 95(3), see note 4, supra.

18. *Mosesian v. Peat, Marwick Mitchell & Co.,* 727 F.2d 873, 877 (9th Cir.1984), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984); *United Park City Mines Co. v. Greater Park City Co.,* see note 16, supra.

19. *Clark v. Milam,* see note 7, supra.

20. *Lake v. Lietch,* 550 P.2d 935, 937 (Okla.1976); *Hoskins v. Stevens,* 199 Okla. 297, 185 P.2d 911, 914 (1947); *Cummings v. Board of Educ. of Oklahoma City,* 190 Okla. 533, 125 P.2d 989, 993 (1942).

21. *Samuel Roberts Noble Found., Inc. v. Vick,* 840 P.2d 619, 623 (Okla.1992); *Reynolds v. Porter,* 760 P.2d 816, 820 (Okla.1988); *Seitz v. Jones,* 370 P.2d 300, 302 (1961); *Continental Oil Co. v. Williams,* 207 Okla. 501, 250 P.2d 439, 441 (1952).

22. *Resolution Trust Corp. v. Farmer,* see note 7, supra. See also, *In re John Deere 4030 Tractor,* 816 P.2d 1126, 1133 (Okla.1991).

23. *Resolution Trust Corp. v. Smith,* see note 13 at 812, supra; *Resolution Trust Corp. v. Farmer,* see note 7, supra; *Federal Deposit Ins. Corp. v. Ashley,* 754 F.Supp. 179, 183 (1990); *Federal Savings & Loan Ins. Corp. v. Williams,* see note 13, supra; *Clark v. Milam,* see note 7, supra; *Hecht*

ing of those cases and the majority position is persuasive. We find that, under Oklahoma law, the doctrine of adverse domination may operate to toll the statute of limitations while directors who are guilty of alleged misconduct exercise control over a corporation.[24]

## II.

## APPLICATION OF THE DOCTRINE OF ADVERSE DOMINATION TO DELAY ACCRUAL OR TOLL THE STATUTE OF LIMITATIONS IS LIMITED TO SITUATIONS INVOLVING FRAUDULENT CONDUCT EXERCISED WHILE THE WRONGED CORPORATION IS CONTROLLED BY A MAJORITY OF CULPABLE DIRECTORS AND OFFICERS.

The second question certified requires a two-step analysis: 1) whether the adverse domination doctrine will apply to claims of negligence, gross negligence, breach of fiduciary duty or breach of contract; and 2) what extent of control by the dominating directors or officers is sufficient to justify application of the doctrine. Resolution Trust argues that the doctrine of adverse domination is applicable to situations involving mere negligence, and that a cause of action will not accrue while the corporation is under majority control of the culpable directors. The directors insist that the doctrine of adverse domination should only apply in cases of fraud and fraudulent concealment and that the addition of a single director who

is not involved in the alleged wrongdoing ends any tolling of the cause of action.

### A.

### Degree of culpability.

The directors argue that the better reasoned cases hold that application of the adverse domination doctrine should be limited to cases of fraud and fraudulent concealment. Additionally, they rely upon certain legislative enactments which they assert demonstrate the Legislature's intent that bank directors should be shielded from liability for their negligent acts. Resolution Trust relies upon Oklahoma case law demonstrating that the discovery rule is not applied merely to cases of fraud and intentional wrongdoing and upon extant case law for the proposition that the adverse domination doctrine applies to causes in which fraud and overt wrongdoing are not alleged.

Resolution Trust relies upon cases in which the discovery rule has been applied in negligence actions to support its argument that fraudulent conduct on behalf of directors is not a prerequisite to application of the adverse domination doctrine.[25] However, this Court has not applied the discovery rule in a broad range of negligence actions.[26] Whether the discovery doctrine will apply in professional negligence actions is a judicial determination which must be made on a case by case basis.[27]

Just as there are two views on whether the doctrine of adverse domination should be rec-

---

v. *Resolution Trust Corp.*, see note 9, supra; *United Park City Mines v. Greater Park City Co.*, see note 16 at 886, supra.

**24.** We agree with the assertion of the directors that the application of the doctrine of adverse domination presupposes that there has not been notice sufficient to apprise an interested party of the facts needed to bring about a suit. The proper notice to the appropriate party negates the necessity of application of the doctrine. If the doctrine is not applicable, a court need not determine the extent of control by the dominating directors or officers sufficient to allow the statute of limitations to run. See discussion and related footnotes, p. 11, supra.

**25.** The discovery rule has been applied in the following instances: medical malpractice, *Seitz v. Jones*, see note 21, supra; legal malpractice,

*Funnell v. Jones*, 737 P.2d 105, 107 (Okla.1985), cert. denied, 484 U.S. 853, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987); negligence actions against contractors, *McVay v. Rollings Constr., Inc.* 820 P.2d 1331, 1333 (Okla.1991) and *Smith v. Johnston*, 591 P.2d 1260, 1263–64 (Okla.1978) and architects, *MBA Commercial Constr. v. Roy J. Hannaford Co., Inc.*, 818 P.2d 469, 474 (Okla. 1991); products liability, *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 950–51 (Okla.1984); property actions for the recovery of personal property, *In re John Deere 4030 Tractor*, see note 22 at 1130, supra; and damage to real property, *Harper–Turner Oil Co. v. Bridge*, 311 P.2d 947, 949–50 (Okla.1957).

**26.** *Lovelace v. Keohane*, 831 P.2d 624, 629, 11 A.L.R.5th 1061 (Okla.1992).

**27.** Id.

ognized, there is a split of authority on whether, once the doctrine is incorporated, it will apply in negligence actions.[28] The rationale of courts applying the doctrine to cases of negligence argue that it is not only in situations involving fraud which a corporation can be prevented from learning of a potential claim against its directors and officers. They reason that, even in cases of negligence, it may be unlikely that directors will take the affirmative step of communicating information which could cause criticism of their performance.[29] However, those courts refusing to apply the doctrine to cases of negligence rest their argument on the premise that the doctrine is founded on the presumption that those who engage in fraudulent activity likely will make it difficult for others to discover their misconduct. The courts which have refused to extend the doctrine to cases of negligence reason that to do so would effectively eliminate the statute of limitations in all cases involving a corporation's claims against its own directors.[30] The necessity for a finding of active conduct was recently

enunciated by the Fifth Circuit in *Resolution Trust Corp. v. Acton,* 49 F.3d 1086, 1090 (5th Cir.1995). The federal court wrote:

"[*Federal Deposit Ins. Corp. v. Dawson,* 4 F.3d 1303, 1309 (5th Cir.1993) ] requires intentional conduct. The words 'active participants in wrongdoing or fraud' are more consistent with intentional conduct than with negligent conduct. The fact that the Dawson court required not only fraudulent conduct or wrongdoing but also 'active participation' therein is significant." (Footnote omitted.)

The doctrine of adverse domination is very narrow.[31] We find persuasive the reasoning of those courts which hold that to extend the doctrine to cases involving conduct less culpable than fraud would be to eliminate the statute of limitations in director-liability actions. Furthermore, this reasoning is supported by recent legislative enactments allowing the insertion of liability-limiting clauses in bylaws and certificates of incorporation.[32] Therefore, we find that application

**28.** The following courts have held that the adverse domination doctrine applies to less than fraudulent conduct: *Resolution Trust Corp. v. Smith,* 872 F.Supp. 805, 814 (D.Oregon 1995) (Oregon courts would not limit doctrine to claims involving more than simple negligence.); *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litg.,* 794 F.Supp. 1424, 1453 (D.Ariz. 1992); *Federal Deposit Ins. Corp. v. Paul,* see note 7, supra (Negligence action accrued when FDIC acquired claims.); *Federal Deposit Ins. Corp. v. Greenwood,* see note 13, supra; *Federal Deposit Ins. Corp. v. Carlson,* see note 13, supra; *Federal Deposit Ins. Corp. v. Berry,* 659 F.Supp. 1475, 1486 (E.D.Tenn.1987); *Federal Deposit Ins. Corp. v. Buttram,* see note 13, supra; *Resolution Trust Corp. v. Scaletty,* see note 16, supra; *Clark v. Milam,* see note 7, supra; *Hecht v. Resolution Trust Corp.,* see note 9, supra. See also, *Resolution Trust Corp. v. Gregor,* 872 F.Supp. 1140, 1149–50 (E.D.N.Y.1994) (Federal statute holding directors of federal chartered savings and loans personally liable for gross negligence does not preempt Resolution Trust's state law claim against directors of failed thrift for simple negligence.).

Other courts have limited the doctrine to cases in which the directors were involved in active wrongdoing: *Resolution Trust Corp. v. Armbruster,* (8th Cir.1995), 52 F.3d 748 (8th Cir.1995); *Resolution Trust Corp. v. Acton,* 49 F.3d 1086, 1090 (5th Cir.1995); *Resolution Trust Corp. v. Artley,* 28 F.3d 1099 (11th Cir.1994) (Applying Georgia law.); *Federal Deposit Ins. Corp. v. Cocke,* 7 F.3d 396, 402 (4th Cir.1993), *cert. de-*

nied, —— U.S. ——, 115 S.Ct. 53, 130 L.Ed.2d 12 (1994) (Applying Virginia law.); *Federal Deposit Ins. Corp. v. Dawson,* see note 13, supra (Applying Texas law.); *Resolution Trust Corp. v. Farmer,* see note 7, supra; *Resolution Trust Corp. v. Gravee,* 1995 W.L. 75373 (N.D.Ill.1995).

**29.** *Resolution Trust Corp. v. Smith,* see note 13, supra; *Resolution Trust Corp. v. Farmer,* see note 7, supra; *Clark v. Milam,* see note 7, supra; *Hecht v. Resolution Trust Corp.,* see note 9, supra.

**30.** *Federal Deposit Ins. Corp. v. Dawson,* see note 6, supra. See also, *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 580 (Tex. 1963).

**31.** *Federal Deposit Ins. Corp. v. Dawson,* see note 6 at 1312, supra; *Federal Deposit Ins. Corp. v. Shrader & York,* 991 F.2d 216, 227 (5th Cir. 1993).

**32.** Title 18 O.S.Supp.1993 § 381.26 provides in pertinent part:

"... 2. The bylaws or a resolution of a savings and loan association as adopted or amended by the members or stockholders may include a provision eliminating or limiting the personal liability of a director to the association or its holding company, or to the shareholders of either for any negligence in the performance of his duties but not for:

a. any breach of the director's duty of loyalty to the association or its holding company, or to the shareholders of either;

of the doctrine of adverse domination to delay accrual or toll the statute of limitations is limited to situations involving fraudulent conduct.

## B.

### Degree of control.

Resolution Trust argues that a cause of action is tolled under the doctrine of adverse domination until the corporation is controlled by a disinterested majority of directors. The directors insist that the doctrine is applicable only until a single, disinterested director is appointed to the board.

■ The adverse domination doctrine does not mandate that accrual will occur only after the wrongdoing directors have lost control of the corporation.[33] Rather, under the doctrine, a rebuttable presumption arises. It is presumed that control of the entity by the culpable officers and directors precludes the entity from bringing suit against them. The presumption differs according to which of the two major versions—"disinterested majority"

> b. acts or omissions not in good faith or which involve intentional misconduct or a violation of law; or
> c. any transaction from which the director derived an improper personal benefit...."
> Title 18 O.S.Supp.1992 § 1006 provides in pertinent part:
> "... B. In addition to the matters required to be set forth in the certificate of incorporation pursuant to the provisions of subsection A of this section, the certificate of incorporation may also contain any or all of the following matters:
> 7. A provision eliminating or limiting the personal liability of a director to the corporation or its shareholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director:
> a. for any breach of the director's duty of loyalty to the corporation or its shareholders; or
> b. for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; or
> c. under Section 1053 of this title; or
> d. for any transaction from which the director derived an improper personal benefit.
> No such provision shall eliminate or limit the liability of the director for any act or omissions occurring prior to the date when such provision becomes effective...."

**33.** *Resolution Trust Corp. v. Smith*, see note 13, supra.

or "single disinterested director"—of the doctrine are applied.[34]

The "disinterested majority" version carries the presumption that control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals cannot be expected to sue themselves or to initiate an action contrary to their own interests. However, the presumption can be rebutted by evidence that someone other than the wrongdoing directors had knowledge of the cause of action. This party must have both the ability and the motivation to bring suit.[35] The burden is on the defendant, who has the obligation to prove the limitations defense.[36] Under the "disinterested majority" version of the adverse domination doctrine, limitations do not begin to run against an officer who resigns if the other culpable directors remain in control of the organization after the resignation. The rationale for this position is that the remaining directors continue to dominate the corporation and that they are unlikely to initiate an action which could reveal their wrongdoing.[37]

**34.** *Resolution Trust Corp. v. Scaletty*, see note 16, supra. A related theory is the "illusory control" version of the adverse domination doctrine. It provides that limitations are not tolled in situations where the culpable directors appear to control but where in actuality governmental regulators have the power to control the corporation, thus rendering the board's control "illusory." Research does not reveal any case adopting this theory. *Resolution Trust Corp. v. Kerr*, see note 13, supra; *Hecht v. Resolution Trust Corp.*, see note 9, supra.

**35.** *Resolution Trust Corp. v. Smith*, see note 13, supra; *Federal Deposit Ins. Corp. v. Bird*, see note 13, supra; *Resolution Trust Corp. v. Scaletty*, see note 16, supra; *Hecht v. Resolution Trust Corp.*, see note 9, supra.

**36.** *Resolution Trust Corp. v. Smith*, see note 13, supra.

**37.** *Resolution Trust Corp. v. Fiala*, 870 F.Supp. 962, 972 (E.D.Mo.1994);

*Resolution Trust Corp. v. Scaletty*, see note 16, supra; *Federal Sav. & Loan Ins. Corp. v. Williams*, see note 16, supra; *Resolution Trust Corp. v. Scaletty*, see note 13, supra; *Hecht v. Resolution Trust Corp.*, see note 9, supra. But see, *Federal Deposit Ins. Corp. v. Carlson*, see note 13, supra.

In *Federal Deposit Ins. Corp. v. Farris*, 738 F.Supp. 444–445 (W.D.Okla.1989), the federal

The burden is on the plaintiff under the "single disinterested director" version of the doctrine. The plaintiff must show that the culpable directors had full, complete and exclusive control of the corporation and must negate the possibility that an informed director or shareholder could have induced the corporation to institute suit.[38] Once the corporate plaintiff has shown that such control existed and that there was no one else with the knowledge and ability to sue, then accrual will not be deemed to have occurred until someone other than the culpable directors gained the knowledge and the ability to act.[39]

■ The directors urge us to adopt the "single disinterested director" version of adverse domination as did the Tenth Circuit in *Farmers & Merchants Nat'l Bank v. Bryan*, 902 F.2d 1520, 1522 (10th Cir.1990).[40] The *Farmers* court found that a plaintiff seeking to toll the limitations statute on the basis of domination had the burden to show full, complete and exclusive control in the directors or officers charged. Under the "single disinterested director" version, once a director resigns and a presumably disinterested party takes a position on the board, the statute of limitations will begin to run. The directors rely on language found in *Bilby v. Morton*, 119 Okla. 15, 247 P. 384, 387 (1926) for

adoption of a theory providing that resignation by a director triggers the limitations statute. They assert that certain language used in *Bilby* indicates that once a director resigns, the statute of limitations will run as against that director. The language quoted provides:

"Generally, where the cause of action is not based upon a statute, the cause of action begins to run from the time of the alleged wrongful act or omission, subject to the exception that ordinarily, in the case of fraud or concealment, the statute does not begin to run until the lapse of time after when it should have been discovered in the exercise of reasonable diligence, and subject to a further exception where the offending directors are in control, **in which case the statute does not begin to run until they cease to be directors.**" (Emphasis supplied.)

This language does not compel this Court to adopt the "single disinterested director" version of the doctrine of adverse domination nor does it indicate that in all cases where a director resigns any causes of action against the resigning director will automatically accrue. Although a cursory reading of the quoted language appears to support the di-

district court found that the limitations period against a director who resigned began to run upon the date of the resignation. It should be noted, that in doing so, the federal court also recognized the date of resignation as also being the last possible date that the board of directors could have controlled the corporation. In *Federal Deposit Ins. Corp. v. Hudson*, see note 13, supra, the federal district court did not determine whether the resignation of a director was sufficient to start the running of the statute of limitations because it was immaterial to the claims at issue.

**38.** *Farmers & Merchants Nat'l v. Bryan*, see note 6, supra; *Resolution Trust Corp. v. Fleischer*, 826 F.Supp. 1273, 1278 (D.Kan.1987); *Resolution Trust Corp. v. Scaletty*, see note 16, supra; *Hecht v. Resolution Trust Corp.*, see note 9, supra.

**39.** *Hecht v. Resolution Trust Corp.*, see note 9, supra.

**40.** *International Rys. of Central America v. United Fruit Co.*, see note 7, supra; *Resolution Trust Corp. v. Farmer*, 865 F.Supp. 1143, 1156 (E.D.Penn.1994). See also, *Mosesian v. Peat, Marwick Mitchell & Co.*, see note 18, supra; *IIT*

*v. Cornfeld*, see note 13, supra; *United Park City Mines Co. v. Greater Park City Co.*, see note 16, supra.

The following courts have adopted the "disinterested majority version" of the doctrine: *Federal Deposit Ins. Corp. v. Dawson*, see note 6, supra (The fifth circuit noted that under Texas law, the plaintiff still has the burden to show majority control.); *Resolution Trust Corp. v. Smith*, see note 13, supra; *Federal Deposit Ins. Corp. v. Benson*, 867 F.Supp. 512, 520 (S.D.Tex.1994); *Resolution Trust Corp. v. Scaletty*, see note 8, supra; *Federal Deposit Ins. Corp. v. Greenwood*, see note 13, supra; *Federal Savings & Loan Ins. Corp. v. Williams*, see note 13, supra; *Resolution Trust Corp. v. Scaletty*, see note 16, supra; *Hecht v. Resolution Trust Corp.*, see note 9, supra; *Allen v. Wilkerson*, 396 S.W.2d 493 (Tex.Civ.App.1965). See also, *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation*, see note 28 at 1452, supra (Limitation period on corporation's cause of action is tolled while wrongdoers control the corporation.); *Federal Deposit Ins. Corp. v. Buttram*, see note 13 at 253, supra (Cause of action against directors does not accrue as long as they remain in control of corporation.)

rectors' position, when the quote is read in its entirety, one notes that it also relates to "control by the directors." This language is as supportive of the "disinterested majority" version of the doctrine of adverse domination as it is to the adoption of the "single disinterested director" version.

The policies enunciated in support of the adoption of the "disinterested majority" version comply with equity [41] and with the general way in which limitation defenses operate. It provides that it is appropriate for the directors to bear the burden of rebutting a presumption of control, because they have greater access to the relevant information—it is the directors, those in control of the corporate records, who will know whether anyone was in a position to bring suit on the corporation's behalf. To rebut a presumption that accrual of the claims does not take place until a disinterested majority has replaced the culpable directors, the defendants must show that there was someone who had the knowledge, the ability and the motivation to bring suit during the period of corporate control.[42] Requiring the directors to carry the burden of production is consistent with the general rule that the party raising the statute of limitations defense has the burden of presenting evidence to establish the time bar.[43] We adopt the "disinterested majority" version of the adverse domination doctrine. The party most likely to be in possession of the information carries the burden to rebut a presumption that accrual of the claim does not occur until a disinterested majority has replaced the controlling culpable directors. It also conforms with Oklahoma case law requiring the party raising a limitations defense to establish the bar.

## CONCLUSION

The doctrine of adverse domination recognizes the reality of situations involving wrongdoing by controlling directors and officers of a corporation **and the corporation's inability to institute suit to protect itself.** It is applied to toll statutes of limitations or to delay accrual of causes of action in situations when those in power control the information necessary to institute suit on behalf of an injured corporation. These parties cannot be expected to sue themselves or to initiate an action contrary to their own interests.[44] Its principles were recognized in *Bilby v. Morton,* 119 Okla. 15, 247 P. 384, 386–87 (1926); and they are applied by the majority of state courts which have considered the issue.[45] Today, we hold that the doctrine of adverse domination may operate to toll the statute of limitations while directors who are guilty of alleged misconduct exercise control over a corporation.

This Court strictly construes statutes of limitations. They are not enlarged on consideration of hardship or inconvenience.[46] To apply a negligence standard to the doctrine of adverse domination would effectively eliminate operation of the statute of limitations in director-liability causes.[47] In answer to the second certified question, we find that application of the doctrine of adverse domination to delay accrual or toll the statute of limitations is limited to situations involving fraudulent conduct exercised while the wronged corporation is controlled by a majority of culpable directors and officers. In adopting the "disinterested majority" version of the adverse domination doctrine to govern accrual of claims by corporations against di-

41. The adverse domination doctrine is an equitable vehicle for tolling the statute of limitations. *Farmers & Merchants Nat'l Bank v. Bryan,* see note 6, supra.

42. *Hecht v. Resolution Trust Corp.,* see note 9, supra.

43. *Special Indem. Fund v. Choate,* 847 P.2d 796, 804 (Okla.1993); *MBA Commercial Constr., Inc. v. Roy J. Hannaford Co., Inc.,* 818 P.2d 469, 472 (Okla.1991); *American Ins. Union v. Jones,* 135 Okla. 101, 274 P. 478–479 (1929).

44. *Federal Deposit Ins. Corp. v. Appling,* see note 8, supra; *Resolution Trust Corp. v. Scaletty,* see note 8, supra; *Federal Deposit Ins. Corp. v. Ashley,* see note 8, supra; *Federal Deposit Ins. Corp. v. Greenwood,* see note 8, supra.

45. See note 16, supra.

46. *Lake v. Lietch,* see note 20, supra; *Hoskins v. Stevens,* see note 20, supra; *Cummings v. Board of Educ. of Oklahoma City,* see note 20, supra.

47. *Federal Deposit Ins. Corp. v. Dawson,* see note 6, supra.

rectors and officers, we recognize that the controlling parties may rebut the presumption that the accrual of the claim does not take place until a disinterested majority has replaced the culpable directors in control of the corporation. To do so, the directors have the burden of showing that there was someone who had the knowledge, ability and motivation to bring suit during the period in which the culpable parties controlled the corporation.

 Although *Bilby v. Morton,* 119 Okla. 15, 247 P. 384, 386–87 (1926) contains language similar to that used in support of the adoption of the adverse domination doctrine, our decision is rendered on an issue of first impression. This Court is not prohibited nor compelled to give judicial decisions retrospective operation.[48] Judicial policy determines whether, and to what extent, a new rule will operate retroactively.[49] This Court is not unaware of the instability of banking procedures and of the plethora of suits filed on economic issues in Oklahoma's recent history. Determinations of the applicability of a judicial decision are made after a careful weighing of three applicable factors—purpose, reliance and burden.[50] Based on considerations of Oklahoma's economic history and upon a consideration of the factors enumerated, the instant ruling is hereby given effect in this case and prospectively, in all matters currently in the litigation pipeline— state and federal—but not to any claims, not now pending, which arose *before* the date this opinion is promulgated.[51]

## QUESTIONS ANSWERED

We find that: 1) under Oklahoma law, the doctrine of adverse domination may operate to toll the statute of limitations while directors who are guilty of alleged misconduct exercise control over a corporation; and 2) application of the doctrine of adverse domination to delay accrual or toll the statute of limitations is limited to situations involving fraudulent conduct exercised while the wronged corporation is controlled by a majority of culpable directors and officers.

All justices concur.

---

**48.** *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364–65, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932); *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601 (1965); *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971); *Harry R. Carlile Trust v. Cotton Petroleum Corp.,* 732 P.2d 438, 445 (Okla. 1986), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 and 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1986).

**49.** *Harry R. Carlile Trust v. Cotton Petroleum,* see note 48, supra; *Thompson v. Presbyterian Hosp., Inc.,* 652 P.2d 260, 268 (1982). See also, *Short v. Kiamichi Area Vo–Tech School,* 761 P.2d 472, 479 (Okla.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1341, 103 L.Ed.2d 811 (1988).

**50.** *Short v. Kiamichi Area Vo–Tech School,* see note 49, supra; *Linkletter v. Walker,* see note 48 at 629, supra; *Carlile Trust v. Cotton Petroleum Corp.,* see note 48 at 445, supra; *Thompson v. Presbyterian Hosp., Inc.,* see note 49 at 268, supra.

**51.** *Amoco Prod. v. Corporation Comm'n,* 751 P.2d 203, 208 (Okla.1986); *Harry R. Carlile Trust v. Cotton Petroleum Corp.,* see note 48, supra; *Griggs v. State ex rel. Department of Trans.,* 702 P.2d 1017 (Okla.1985).